## ANDREW P. FORZEN v. WARREN W. HURD.

(126 N. W. 224.)

**Negligence — Principal and Agent — Setting Prairie Fire.**

1. In order to hold a party liable for loss occasioned by a prairie fire which
it is undisputed he did not set or negligently permit to escape from his con-
trol, it must appear that the parties who originated and tended the fire were,
in so doing, acting under his express or immediate direction, or that they were
at such time in his employ, and required or directed by him to do certain
work the due performance of which, in the ordinary course, involved the set-
ting of fire to the prairie grass.

**Trial — Directed Verdict — Appeal and Error — Question for Jury.**

2. In reviewing the action of a trial court in denying a motion made by
defendant at the close of the whole testimony for a directed verdict, if it
appears that the question of the sufficiency of the evidence introduced to sup-
port a verdict is in some doubt, and that the jury found and rendered a ver-
dict in plaintiff's favor, the ruling of a trial court submitting the question of
fact to the jury will not be disturbed.

---

Note.—The liability of a person for the acts of others in setting out fire seems
to depend upon the same principles which govern generally in attempts to hold one
person liable for the acts of another, as shown by a review of the authorities, which
are not numerous, in notes in 21 L.R.A. 255 and 6 L.R.A.(N.S.) 882.

The narrower question of the liability of an employer for fire set out by an
independent contractor for the purpose of clearing land is considered in a note in
17 L.R.A.(N.S.) 788.

**Trial — Instructions.**

3. A charge to the jury, which contains no exposition whatever of the elemental principles upon which depends the liability of a party, and makes the law of the case entirely dependent upon inferences from the testimony or resolvable from the degree of credibility to be given the different witnesses, is misleading and insufficient.

**Trial — Instruction — Liability for Setting Fire.**

4. An instruction that a defendant may be held liable for damages occasioned by a prairie fire if the jury find the·fact to be that the men who set and tended the fire were working for the defendant "at that time in the course of their usual employment on the farm, and doing his work the same as your men do when you are gone," contains a misdirection as to the law, as it incorrectly assumes that the ordinary and usual work of a farm permits or requires the setting of fire to the prairie grass under conditions that render such act extremely hazardous.

**Oral Instruction — Waiver of Written Charge.**

5. The giving of oral instruction to a jury is authorized only in an exceptional case in which the parties deliberately and voluntarily assent thereto, and should be given only after such consent is obtained and entered on the minutes, at such time and in such manner as will not operate to the prejudice of the rights of either party.

Opinion filed April 12, 1910.

Appeal from District Court, Wells county; *E. T. Burke,* J.

Action by Andrew P. Forzen against Warren W. Hurd, for damages occasioned by a prairie fire. Plaintiff had judgment and defendant appeals.

Judgment reversed and new trial ordered.

*T. F. McCue,* for appellant.

The master, to be liable for servant's acts, must have such control over him as to be able to direct his performance of service, and prescribe the acts to accomplish the end. Callahan v. Burlington & M. River R. Co. 23 Iowa, 564; St. Louis, Ft. S. & W. R. Co. v. Willis, 38 Kan. 330, 16 Pac. 728; Kellogg v. Payne, 21 Iowa, 575; Rait v. New England Furniture & Carpet Co. 66 Minn. 76, 68 N. W. 729, 20 Am. & Eng. Enc. Law, p. 180; Slater v. Advance Thresher Co. 97 Minn. 305, 5 L.R.A.(N.S.) 598, 107 N. W. 133.

A master may loan his servant; and when so loaned is not liable for the acts of such servant. Miller v. Minnesota & N. W. R. Co. 76

Iowa, 655, 14 Am. St. Rep. 258, 39 N. W. 188; Cotter v. Lindgren, 106 Cal. 602, 46 Am. St. Rep. 255, 39 Pac. 950, 20 Am. & Eng. Enc. Law, 2d ed. p. 178.

The court shall only instruct as to the law of the case. Bardwell v. Ziegler, 3 Wash. 34, 28 Pac. 360; State v. Barry, 11 N. D. 428, 92 N. W. 809; Ryan v. Farley & L. Mfg. Co. 140 Iowa, 619, 119 N. W. 86; People v. Clarke, 105 Mich. 169, 62 N. W. 1117.

*R. G. McFarland,* for respondent.

Statement of case must specify wherein the evidence is insufficient to sustain the verdict. Rev. Codes, 1905, § 7058; Gagnier v. Fargo, 12 N. D. 219, 96 N. W. 841; 2 Spelling, New Tr. & App. Proc. § 433.

If the evidence is such that different minds may draw different conclusions, case is for jury. Knight v. Towles, 6 S. D. 575, 62 N. W. 964; Gates v. Max, 125 N. C. 139, 34 S. E. 266; McRea v. Hillsboro Nat. Bank, 6 N. D. 353, 70 N. W. 813; Zink v. Lahart, 16 N. D. 56, 110 N. W. 931; Johnson v. Barber, 10 Ill. 425, 50 Am. Dec. 416; Standard Oil Co. v. Parkinson, 82 C. C. A. 29, 152 Fed. 681; 1 Thomp. Neg. 2d ed. §§ 518 to 536; 31 Cyc. Law & Proc. pp. 1671 to 1675.

ELLSWORTH, J. The complaint, as cause of action, alleges that defendant was the owner of much land in Wells county, in the vicinity of that owned and occupied by plaintiff, and on October 25th, 1901, was engaged in burning a fire guard around his own premises and around the land of other persons and owners; that while so engaged in setting fire to the wild prairie grass, which on that day was frosted, dry, and inflammable, he and his servants negligently permitted the fire so set to burn out of and escape from an insufficient fire guard intended to confine it, and, driven by a high wind then prevailing, rapidly to extend in one continuous conflagration to the premises of plaintiff, upon which it burned and destroyed a large quantity of hay in stack, for which loss and injury damages are claimed. The answer of defendant is a general denial. Upon the trial it appeared that on the day mentioned in the complaint three persons, named Bowers, Ridgeway, and Culp, were engaged in burning a fire break between sections 11 and 14 in the township in which plaintiff's land lay, and while so engaged fire set and tended by them escaped from the limits in which they were seeking to confine it, and burned over the inter-

vening prairie and reached and destroyed plaintiff's hay. It is admitted that plaintiff was not present at the origin of this fire, that he did not set it and was in no manner instrumental in permitting its spread, unless it can be said that he was responsible for the acts of the three men named above. At the time of the trial Bowers was deceased, and his testimony had been taken during his lifetime. Culp, so far as his evidence is material, testified by deposition as follows: "I worked for W. W. Hurd in October, 1901, for about three weeks previous to the fire; commenced work about that time and continued until the 15th day of November, 1901. My duties were building fences, burning fire guards, and doing carpenter work. While I was engaged in this capacity a prairie fire escaped on the 25th day of October, 1901. I was engaged at that time somewhere on the north line of section 14, township 145, range 73, in Wells county. At the time the fire escaped J. B. Bowers and W. W. Ridgeway were with me. We were burning out the center between the plowing in order to make the fire break around W. W. Hurd's land. The plowing was done by other parties; they plowed three furrows north of the section line and then three furrows south of the section line. We were burning grass between the furrows. . . . The fire escaped about 2 o'clock in the afternoon of that day. The wind was blowing pretty hard for burning fire guards. Myself and Mr. Ridgeway thought the wind too strong, but Mr. Bowers was the foreman, he was the boss, so we went on and did what we were told. We had a team and a wagon, one barrel of water, and three mops. We also had two torches for lighting fires. . . . I was paid by the day. The carpenter work which I spoke of was done on the ranch after we had finished the building of fences and burning fire guards. I own land and live in McLean county." Ridgeway testified that in burning the fire break between sections 11 and 14: "It was my job, the wind being northwest, to fire on the south side first so as to have the fire go against the wind. As near as I can tell I was there with the torch, lighting it a little at a time, and they (Culp and Bowers) would keep it from spreading to the south, and I think Mr. Bowers was making overhanded licks, when it flashed up and got beyond me, and, in about a minute, it was going across the prairie at a pretty rapid rate. As I remember, we hadn't burned any fire breaks until that afternoon. We

burned out this line between [sections] 11 and 12, but we didn't do it on that day. We just started to burn that afternoon. I think we started between sections 11 and 14 at the east and going west. Mr. Culp assisted me, and I was on the south side, burning against the wind, with the lighted torch. I would go in front as it would burn against the wind. Culp was on the other side. . . . Mr. Culp, Mr. Bowers, and myself were burning the fire break. Mr. Bowers was directing it. He was foreman. I was working under Mr. Bowers,— working for him. I was employed by him. Mr. Bowers paid me for my service. Mr. Bowers directed the acts that were done on the day when the fire was set out. . . . Mr. Bowers at that time was residing on his own homestead. I boarded at Bowers' at the time I was burning this fire break, at Bowers' home. Mr. Hurd did not give me any directions whatever with reference to this burning complained of in the complaint."

The defendant, Hurd, called by the plaintiff as a witness, testified that he owned sections 13 and 23 in the township in which the fire occurred and other land in the township east; that he had no other land in that immediate vicinity; that he was farming and stock raising in the fall of 1901, and as a stock raiser he had to protect the grass by fire guards; that on October 25th, 1901, Bowers was not working for him. Sometime before that date Bowers had worked for him, but was not working for him at that time; that on October 25th, he did not have any persons at work burning fire guards. That in the earlier part of the month he had fire guards burned on the west line of section 7 in the township east and on the north line of section 13, the land he owned in this township; that he did not pay Ridgeway, Bowers, or Culp for burning fire guards on October 25th, 1901; that they were not working for him; that Ridgeway was working for Bowers at the time of this fire, and he was burning the fire guards on his own responsibility. That Culp was in his employ on October 25th, 1901, but that on that date Bowers did not have enough help to burn fire guards, and he let Culp go and help him; that he paid Culp for the time he worked for him, but Bowers paid him back for Culp's service; in other words, they exchanged work; that he was not personally interested in the burning of the fire guards when the fire escaped; that Culp was in Bowers' employ that day and working for him. That he

paid Culp in the sense that payment for that day's work was included with that for Culp's other services; but Bowers paid him back for Culp's time on that day; that Bowers broke these fire guards; that he had a crew on his farm burning fire guards until he got to the corner of his land; that he had a fire guard burned on the north line of section 13, which corners on section 11; that this was the northwest corner of his land and the end of his burning fire guards; that Bowers then took up the burning of fire guards and followed it out.

Called as a witness on his own behalf Mr. Hurd testified directly as follows: "Ridgeway, Bowers, and Culp were not in my employ on October 25th, 1901, the date of the fire. They were not performing any labor for me on that day. I never directed this fire to be set out. It was not set out by any of my employees or under my direction. Culp, Ridgeway, and Bowers were not performing any labor for me on the date of the fire. They were not in my employ, nor were they told by me to set the fire complained of in the complaint. I was not the owner of the land at that time or any other time. Culp was formerly in my employ, but was working for Bowers on this particular date, and Bowers paid for his services. Culp might have thought he was working for me. As a matter of fact he was working for Mr. Bowers. I hired him out to Mr. Bowers. Mr. Culp is mistaken if he says he was working for me on that day; he was working for Mr. Bowers."

The other testimony introduced upon the trial is chiefly in reference to the amount and value of the hay destroyed, and has no material bearing upon the question of defendant's responsibility for the damage occasioned by the fire. At the close of plaintiff's case and again at the conclusion of all the testimony, defendant moved the court to direct the jury to return a verdict in his favor on the grounds that, "taking the evidence as submitted by the plaintiff, it would not support a verdict in favor of plaintiff," and "taking all the evidence together it did not establish a cause of action against the defendant." These motions were each denied by the court, and such rulings are assigned as error on this appeal. The defendant also excepted to each and every of the instructions given by the court in its charge to the jury; and to each sentence and line of each instruction, and particularly to certain parts of the same which, so far as they are material, will be referred to hereinafter. The jury rendered its verdict in favor of the

plaintiff.   On the rendition of this verdict, defendant moved the court for judgment notwithstanding the verdict, on the grounds set out in his motions for a directed verdict.   This motion was also denied, and such action of the court is assigned as error.

The defendant, as appellant before this court, calls pointedly the court's attention to the fact that the evidence introduced upon the trial presents as undisputed facts that the fire was not set or permitted to spread by any act of defendant nor upon his premises, nor, so far as appears, for his benefit or under his direction; that the fire was admittedly set and permitted to spread and cause damage, by a party of three persons none of whom stood in such relation to defendant that the doctrine of *respondeat superior* can be invoked to create liability on his part; that the district court should, upon this evidence, have directed a verdict in favor of defendant, and, having refused to do so and to render judgment notwithstanding the verdict, this court should now reverse the judgment rendered, and direct a dismissal of the action.

It is readily apparent that defendant cannot be responsible for the damage caused by the fire in question, unless there is competent evidence connecting him with the persons who set the fire and negligently permitted it to spread, in such relation that, under the law, he is requird to respond for the consequences of their negligent acts.   Plaintiff's theory in this particular seems to be that at the time of the fire these men were in the employ of defendant, and acting under his express direction in all they did, or that the setting and tending of the fire in this manner was within the scope of the duties which, by the terms of their employment, they were required to perform.   If there can be said to be such competent evidence as will reasonably sustain a finding of the jury that this relation existed, there was no error in the ruling of the district court in denying defendant's motion for a directed verdict.

An examination of the evidence tending, even remotely, to connect defendant with the acts of the persons through whose negligence the fire originated and spread, discloses that it is of the most meager and unsatisfactory character.   It proceeds almost entirely upon the principle of vague inferences, derived from the fact that two of the men had been employed by defendant, before or after the fire, to burn fire

guards or do general farm work, and that the work of firing the prairie grass that was being done on October 25th, 1901, was for his benefit. Defendant admits that the witness Culp was employed by him as a farm hand on the day of the fire, and that he probably paid him for such services as he rendered on that day; but claims that he had arranged with Bowers that Culp should be under his directions during that time, and that Bowers should pay defendant for the value of Culp's services. Even assuming, however, that Culp was in defendant's employ on the day in question, and that he had directed him generally to assist Bowers and Ridgeway in burning out a fire guard, there is no evidence that he either set the fire or negligently permitted it to escape from control. On the other hand, the witness Ridgeway, as will be observed from his testimony quoted above, testifies that he set the fire on the side of the strip inclosed by the fire guard, opposite the wind, while Culp was working on the other side; and that after the grass was ignited, the fire "flashed up and got beyond me, and, in about a minute, it was going across the prairie at a pretty rapid rate," notwithstanding the efforts of Bowers to prevent it. It would seem, therefore, that unless defendant was responsible not only for the acts of Culp, but also for the joint acts of Ridgeway, who set the fire, and of Bowers, who permitted it to escape, he cannot be said to be liable for the consequences of the fire, even though between him and Culp there existed on that day the relation of master and servant. If, in the determination of a motion such as this for a directed verdict, the denials of the defendant could be given due weight, and the question determined from a preponderance of the evidence, there is little question but that it could be resolved only in defendant's favor. As we can, however, under well-settled rules of practice, consider only the testimony of the plaintiff and his witnesses in the light most favorable to his contentions, disregarding all conflicts, we hesitate to disturb the action of the trial court in refusing to direct a verdict; as any point of doubt on a motion such as this should be resolved in favor of the correctness of a ruling which submits issues of fact to a jury. In this connection we may say, however, that there is so near an approach to an entire failure of testimony connecting defendant with the acts of the persons who started the fire, that unless the showing in this regard upon the new trial, which will be ordered herein upon other grounds,

is materially strengthened, the question whether there is evidence sufficient to sustain a verdict in favor of the plaintiff will be in doubt whenever properly presented.

We next come to a consideration of the instruction of the court to the jury. Defendant excepts not only to specific portions of the instructions given, but to the charge as an entirety, claiming not only that it is misleading, faulty, and erroneous in particular instances, but that it is as a whole deficient in that it does not contain a proper exposition of law points directly involved in the case and necessary to its determination. Defendant's counsel claims that the charge is not only deficient in these particulars, but that it is poorly constructed and contains many ill-advised statements and improvident comments upon the evidence and the effect to be given it by the jury; and suggests that conditions attending the preparation and delivery of this charge, largely prejudicial to defendant, are attributable to the fact that it was given orally at the close of the argument, without a stipulation of counsel previously obtained that it might be so given, and at a time when an objection by defendant's counsel to an oral charge could have resulted only in compelling the entire course of the trial to await the preparation of a written charge.

It may be objected that appellant's exceptions to the charge in all its parts, sentence by sentence, is too general to direct the attention of the court to a critical examination of the structure of the entire document, or to point out that it fails in particular instances to comply with the requirements of statute. Respondent's counsel, however, in maintaining that the charge is a proper one in the particulars excepted to by appellant, urges that "the instructions of the court should be considered as a whole," and that "when so considered the instructions are not open to the criticism made by appellant." Our attention being thus invited by both parties to the charge in its entirety, we will examine it for the purpose of determining not only whether certain clauses, considered with the context, are vulnerable to exceptions urged by appellant, but whether it contains such clear and impartial exposition of the law points involved in the case as the law, in the interest of both parties, requires shall be made.

The court, after calling the attention of the jury to the point that its duty was to settle disputed questions of fact arising on the evidence,

and giving a brief outline of plaintiff's cause of action as stated in his complaint, proceeded as follows: "There is no dispute but that this fire was set by some person, and set negligently; there is no dispute in the evidence about that, and was negligently set. The laws of the state of North Dakota forbid the burning of prairies except under certain conditions, which were not complied with in this case, but Mr. Hurd denies that he set this fire. It is not claimed by plaintiff that Mr. Hurd personally set this fire, but it is claimed that his men, working on his farm and about his business and under his orders, set this fire, and therefore Mr. Hurd would be responsible. Mr. Hurd has been on the stand and denied this. He states that this fire was set by some men who were formerly employed by him, and who were not at that time in his employ, except one man who he says was in his employ the rest of the time during the month, but on this day he was loaned to this other man, who he claims set the fire. If this is true, and you, in your province as a jury in settling this disputed fact, find that Mr. Hurd is correct in his testimony, then he would not be liable at all, because the work was not done for him or under his direction. However, there is the testimony of the man who set the fire, whose deposition was read here, which is to the contrary effect. You have heard this testimony, and you will remember it. You will decide first of all whether Mr. Hurd is liable, because if he is not liable you would be wasting your time in arriving at how much hay was burned and how much it was worth. If you find that this fire was started by the other man, in the manner Mr. Hurd claims it was, then your verdict will be for the defendant,—that is, for Mr. Hurd,— that he owes nothing; and you will not concern yourselves over the amount of hay burned, or the price. If, on the other hand, as jurymen, you find the fact to be that these men were working for Mr. Hurd at that time, in the course of their usual employment on the farm, and doing his work the same as your men do when you are gone, even though Mr. Hurd may not have been present at the time, you will find that the acts of these men were the acts of Mr. Hurd, and he would be liable for the damage done." The remainder of the charge is devoted entirely to the manner in which the value of the hay destroyed was to be determined, the burden of proof, and the rules by which the credibility of the witnesses are to be tested. The excerpt

from the charge above quoted includes, without omission, all that portion having any bearing whatever upon the principle of law by which defendant's liability is to be determined.

It is evident at a glance that the law point in the case upon which all other issues depend is that of the liability of defendant for the acts of others. The fact that a fire was set by someone, and by other parties negligently permitted to escape and spread until it destroyed plaintiffs property, presents not the slightest ground in law for holding defendant liable for the loss. The principle under which he could be held liable, if at all, according to the evidence, was that the persons who originated and tended the fire were in so doing acting under his express or immediate direction, or that at such time they were in the employ of defendant to do certain work, the due performance of which necessarily involved the setting of fire to the prairie grass; or in other words, that they were at the inception of the fire acting within the scope of the duties which they were charged by him to perform. Whether or not such relation existed between the persons in question and the defendant was the crucial point to be drawn as a conclusion from the evidence, and in reaching their conclusion it was the duty of the jury to first, as far as possible, reconcile any apparent conflict in the testimony, or, in case it was impossible to do this, to weigh the testimony of each witness and determine from the preponderance of the evidence the ultimate facts as they existed. The instructions of the court seem to proceed upon the theory that the testimony of the defendant and of the witnesses Culp and Ridgeway is in irreconcilable conflict; that if the jury believed the testimony of defendant it should resolve the law point of the case in his favor and hold him not liable; or, on the other hand, if it believed the testimony of Culp, which is declared to be "to the contrary effect," it should find that the acts of the men who set and tended the fire were the acts of Mr. Hurd, and he would be liable for the damage done. To demonstrate the fallacy of this instruction, it is only necessary to compare the testimony of defendant with that of Culp, when it is, at once, apparent that not only are their respective statements not of "contrary effect," but are for the greater part in agreement, differing only on the point of whether or not Culp was directly in the employment of defendant on the day of the

fire; while the testimony of Ridgeway, so far as it touches on that given by defendant, corroborates it throughout.

Further than this, the instruction places a construction upon certain evidence that is wholly unwarranted by any of the testimony in the case. There is no evidence in the record to the effect that either Bowers or Ridgeway, when they set the fire in question and permitted its escape, were "working on his (defendant's) farm and about his business and under his orders." Ridgeway expressly states that he was employed by Bowers, and not by defendant, and defendant states in the most explicit manner that Bowers was not working on his farm or doing any work with which he was concerned, or under his orders. The testimony of Culp is referred to as "the testimony of the man who set the fire." This is a misstatement of fact directly contradictory of the undisputed testimony of Ridgeway that he set the fire when Culp was working in another place. The instruction that defendant should be held liable in damages if "you find the fact to be that these men were working for Mr. Hurd at that time in the course of their usual employment on his farm, and doing his work," is not only misleading in its bearing on the facts the jury was authorized to find, but contains a misdirection as to the law of the case. There was no evidence whatever upon which the jury could base a finding that either Bowers or Ridgeway were working for Mr. Hurd on his farm, or doing his work there or elsewhere at the time of the fire; and even had such evidence been full and competent, the fact that they were "working for Mr. Hurd at that time in the course of their usual employment on the farm, and doing his work the same as your men do when you are gone," such fact would not render defendant liable for the acts of these men if, without express direction from him, they saw fit to go upon other lands than those of defendant, and there perform the hazardous act of setting fire to the prairie grass under conditions when it was extremely likely to escape and burn over and cause damage upon surrounding lands. By no amount of straining permissible in a situation such as this, can such acts as these be brought within the scope of the duties of men employed to do the ordinary work on a farm.

As we view it, the charge in the portions herein referred to is misleading in its comment upon the effect to be given the evidence, and

·contains misdirection upon the law point upon which rests the question of defendant's liability, sufficiently serious to require a reversal of the judgment. The prejudicial character of those instructions specially excepted to is not corrected by the charge in its entirety. In fact, a consideration of the charge as a whole ᵤᵤly serves to emphasize the fact that it contains not only misdirection as to the effect to be given the evidence, but fails to give such clear and explicit direction upon the law points applicable to the case as defendant was entitled to expect. It fails in any part to bring before the jury the elemental principle upon which depends the liability of defendant, and makes the law of the case entirely resolvable from the degree of credibility to be given the different witnesses.

The contention of defendant that the deficiencies of the charge proceed, partially at least, from the fact that it was hastily prepared, and delivered orally at the conclusion of the argument, without any previous stipulation of counsel that this might be done, is suggestive of a means by which many of the deficiencies apparent in this charge may be avoided in future trials. The statute provides that "no court shall instruct the jury in any civil action unless such instructions are first reduced to writing." Rev. Codes 1905, § 7021. In 1893 there was enacted the additional provision, "that with the consent of both parties entered in the minutes, the court may instruct the jury orally," etc. Rev. Codes, 1905, § 7022. It is apparent that this exception was not intended to abrogate the rule requiring that instructions be in writing, but was enacted for the purpose of permitting the giving of an oral instruction in an exceptional class of cases, usually of small importance, in which both parties have voluntarily consented that this may be done. The contemplation of the statute is evidently that this consent shall be volunteered by the party, or, at least, that if requested by the court the request should be made at a time when there is still abundant opportunity for the court to prepare its instructions in case such consent is refused by either party, without interfering with the progress of the trial. A proper respect for the rights of litigants would seem to dictate that such request should not be made in the presence of the jury or in such manner that either party, if he sees fit to refuse assent, will suffer prejudice in the minds of the jury on account of resulting delay. If, as suggested by counsel in this case, there has

grown up in a district of this state a practice of giving oral instructions in all cases, however simple or complicated the issues may be, where the consent of the parties has not been volunteered or requested, or indeed inquired for until after the argument of counsel and the case is otherwise ready for submission to the jury, it is unquestionably an abuse and misapplication of the statute providing for the giving of oral instructions in certain cases. If the infirmities of the charge under consideration proceed to any degree from such cause, there is strong reason for the exercise of greater care in this particular upon another trial.

For the errors in the instructions hereinbefore noted, the judgment of the District Court is reversed and a new trial ordered. All concur.