NATIONAL BENEVOLENT SOCIETY *v.* BARKER.

Opinion delivered November 6, 1922.

1.  TRIAL—REQUEST BY BOTH PARTIES FOR INSTRUCTED VERDICT.—Where, at the conclusion of evidence, both parties requested an instructed verdict, and asked no other instructions, the effect was to waive the right to a jury trial, and it was too late, after the court decided the issues of fact, to request a submission of the same issues to a jury.

2.  INSURANCE—ACUTE AND CHRONIC DISEASES.—An "acute" disease is one "attended with symptoms of some degree of severity and coming speedily to a crisis; opposed to chronic"; a "chronic" disease is one "continuing for a long time, lingering, habitual"; and where a membership certificate and the by-laws of a benefit society exempted it from liability for more than 10 per cent. of the policy if insured died of a chronic disease, an acute case of pellagra would not come within the liability exemption clause.

3.  WITNESSES—PRIVILEGED TESTIMONY.—Where the general physician of a benefit society attended an insured in her last illness, testimony of such physician as to the cause of her death was privileged within Crawford & Moses' Dig., § 4149, and could not be introduced without the consent of insured's representative.

Appeal from Monroe Circuit Court; *George W. Clark*, Judge; affirmed.

*Roy D. Campbell*, for appellant.

The rights of parties to recover upon a policy of life insurance must be determined by the terms of the policy itself. 101 Ark. 353; 122 Ark. 222; 143 Ark. 364.

*C. F. Greenlee*, for appellee.

HUMPHREYS, J. Appellee instituted suit in the Monroe Circuit Court against appellant to recover $250

upon a certificate of membership issued by appellant to her daughter, Annie M. Barker, on November 7, 1918, insuring her life against death on account of certain kinds of sickness. It was alleged that the certificate provided for the payment of that sum to her father, but, if dead, then to her mother, if the insured paid her dues and should die six years after the date of the policy. It was also alleged that the insured paid her dues regularly until her death, and that she died on September 8, 1920, subsequent to the death of her father.

Appellee filed an answer, admitting the issuance of a certificate of membership in its society, and the payment of dues thereon, but alleging that, under the provisions of the certificate and by-laws of the society, it was exempt from liability if the insured died of malaria, and liable for only ten per cent. of the face value of the certificate if she died of a chronic disease; that she died from the effects of either malaria or pellagra, and that pellagra was a chronic disease.

The cause proceeded to a hearing upon the pleadings and testimony, at the conclusion of which each party asked for a peremptory instruction. The court thereupon directed a verdict for appellee in the sum of $250. After the court decided the case on the merits, appellant requested other instructions, which were refused. In our view of the case it is unnecessary to set them out or state them in substance. An appeal has been duly prosecuted to this court from the verdict and judgment rendered pursuant thereto.

There was a clause in the membership certificate and by-laws of the society exempting appellant from liability for the death of the insured on account of malaria or chronic disease. The evidence was in conflict as to whether the insured died of malaria or pellagra.

Appellant testified that her daughter died from the effects of pellagra; that Dr. Thornton, who attended her, said she had pellagra; that she had been well all her

life until she became ill in July, 1920, before her death in September following.

Dr. Gephart testified that he was called as a physician to see the insured in September, 1920, and found her suffering from symptoms of pellagra.

Dr. Thornton, the regular attending physician of the insured in her last illness, on direct examination, testified that she died from the effects of malaria; that pellagra was a chronic disease; on cross-examination, however, he testified, "About two months previous to her death she developed all of the signs of an acute case of pellagra, but in about a month and a half these acute signs receded and she resumed her usual duties."

Under the doctrine announced in the case of *St. L. S. W. Ry. Co.* v. *Mulkey*, 100 Ark. 71, and many later cases cited in the case of *Weber* v. *Rodgers*, 128 Ark. 25, and a very recent case of *J. T. Fargason Co.* v. *Bank of Lepanto, ante*, p. 361, the request made by appellant and appellee for a verdict in his favor, without requesting any other instructions before the court decided the case on its merits, was tantamount to an agreement on their part for the court to decide the issues of fact involved in the case. After the court granted their request and determined the issues of fact in favor of appellee, it was too late for appellant to request other instructions submitting the same issues to the jury. The effect of the original requests of the parties was to waive the right to have the issues of fact determined by the jury. This court must give the same effect to the direction of the trial court as is given to the verdict of a jury. The verdict of a jury will not be set aside on appeal if there is any substantial evidence to support it. There was evidence tending to show that the insured died from the effects of an acute case of pellagra. An acute disease, according to Webster, is one "attended with symptoms of some degree of severity and coming speedily to a crisis—opposed to chronic." And a chronic disease is one "continuing for a long time; lingering; habitual." Under this definition, an acute case of pel-

lagara would not come within the liability exemption clause in the policy and by-laws of appellant.

In the course of the trial the court permitted appellee to show the cause of the insured's death by her attending physician, Dr. Gephart, but refused to permit appellant to prove the cause of her death by Dr. Thornton, who was the insured's general attending physician in her last illness. The evidence of Dr. Thornton was excluded because the information elicited was information acquired by him while attending the insured in a professional character. Such information is a matter of privilege under sec. 4149 of Crawford & Moses' Digest, and cannot be introduced in evidence without the consent of the patient or the patient's representative. It is argued by appellant that appellee waived the right to object to the testimony of Dr. Thornton relative to the condition of the insured because she herself introduced the testimony of Dr. Gephart concerning the insured's condition. This court has decided otherwise. *Mo. & N. A. Ry. Co.* v. *Daniels*, 98 Ark. 352; *K. C. S. R. Co.* v. *Miller*, 117 Ark. 396.

No error appearing, the judgment is affirmed.