Theodis BAKER *v.* STATE of Arkansas

CR 81-132                                   637 S.W.2d 522

Supreme Court of Arkansas
Substituted Opinion on Rehearing
delivered July 19, 1982

*William R.Simpson, Jr.,* Public Defender *& Kelly Carithers,* Deputy Public Defender, by: *Deborah R. Sallings,* Deputy Public Defender, for appellant.

*Steve Clark,* Atty. Gen. by: *Arnold M. Jochums,* Asst. Atty. Gen., for appellee.

DARRELL HICKMAN, Justice. We grant a rehearing on the issue of the doctor-patient privilege; and, finding no error was committed, affirm the conviction and sentence of Theodis Baker.

Theodis Baker, while in the Pulaski County jail, was treated for gonorrhea by the jail nurse. The trial court admitted into evidence the simple fact that he had been treated for gonorrhea. In our opinion in *Baker* v. *State* (May 24, 1982), we held this was error because Baker had "communicated" this information to the nurse and under Ark. Stat. Ann. § 28-1001, Rule 503 (b) (Repl. 1979), the information was privileged. Nothing Baker said to the nurse was admitted; in fact, she could recall no conversation whatsoever.

Rule 503 replaced Ark. Stat. Ann. § 28-607 (1947), which was a much stricter privilege. It read:

> Hereafter no person authorized to practic physic or surgery and no trained nurse shall be compelled to disclose *any information which he may have acquired* from his patient while attending in a professional character *and which information was necessary to*

*enable him to prescribe as a physician or do any act for him as a surgeon or trained nurse.* [Emphasis added.]

That essentially encompasses all conceivable information a physician could have about a patient, and it was so construed. *National Benevolent Society* v. *Barker,* 155 Ark. 506, 244 S.W. 720 (1922). But Rule 503 (b) does not grant a privilege to "any information," only "communications" between the patient and doctor, and confidential ones at that. So Rule 503 is not in essence the same as the former law as we acknowledged in our opinion. It is decidedly different; it protects only confidential communications.

Rule 503 specifically includes psychotherapists and licensed psychologists in the category of "doctor." Obviously what is told to those doctors is more sensitive than that told to average practitioners. So the real protection is aimed at preventing a doctor from repeating what a patient told him in confidence. But the privilege does not go to treatment and that is all the State offered as evidence. In *Gruzen* v. *State,* 267 Ark. 380, 591 S.W.2d 342 (1979), a psychiatrist alerted police that a crime had been committed and indirectly enabled them to discover the defendant's identity. We found no breach of the privilege.

It would be privileged information if Baker had told the nurse in confidence who he had sexual intercourse with, but that is not the question before us. The only issue is whether treatment for gonorrhea is privileged information.

There is no element of self-incrimination involved because Baker voluntarily sought the treatment and thereby subjected himself to the privilege, its protection as well as its limitations. *See Munn* v. *State,* 257 Ark. 1057, 521 S.W.2d 535 (1975).

In our original opinion we construed Rule 503 so that it has exactly the same practical effect as the repealed statute; that is, it protects *any information* the physician collects regarding a patient by incorrectly characterizing it as communication. The legislature made a significant change by adopting a more sensible rule and on rehearing we

recognize that change. The rule not only applies to criminal cases but civil as well. *See Ragsdale* v. *State*, 245 Ark. 296, 432 S.W.2d 11 (1968).

Actually there has long been serious opposition to the existence of any such privilege. As McCormick says: "More than a century of experience with the statutes [of the states granting the privilege] has demonstrated that the privilege in the main operates not as a shield of privacy but as the protector of fraud." McCORMICK'S EVIDENCE § 105 (2d ed. 1972). Wigmore's criticism is in the same vein: "From asthma to broken ribs, from influenza to tetanus, the facts of the disease are not only disclosable without shame, but are in fact often publicly known and knowable by everyone — by everyone except the appointed investigators of the truth," which, in this case were the jurors. *See* VIII WIGMORE ON EVIDENCE § 2380a (McNaughton rev. 1961).

Since we find the trial court made no error in admitting the evidence, the decision on rehearing is affirmed.

ADKISSON, C.J., concurs.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I strongly disagree with the granting of a rehearing and the destruction of the physician-patient privilege. I agree with the majority that the original statute was entirely too broad. It did, in effect, prevent a physician from testifying about any information he had obtained through the doctor-patient relationship. The original rule was justifiably seen as being overly broad. Uniform Rules of Evidence, Rule 503 is a very long and detailed rule. The rule's first sections define "patient," "physician" and "psychotherapist." Then section (4) reads as follows:

> A communication is "confidential" if not intended to be disclosed to third persons, except persons present to further the interest of the patient in the consultation, examination, or interview, persons reasonably necessary for the transmission of the communication, or

persons who are participating in the diagnosis and treatment under the direction of the physician or psychotherapist, including members of the patient's family.

(b) General Rule of Privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental or emotional condition, including alcohol or drug addiction, among himself, his physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family.

Section (d) sets out the exceptions to the foregoing rule. For example, there is no privilege under this rule for communications relevant to an issue in proceedings to hospitalize the patient for mental illness or examinations by order of a court or when the condition is claimed as an element of a defense. Therefore, it is plain all privilege relating to criminal matters and institutionalization for mental illness is excluded from the rule. The rule, of course, can be waived by the patient himself.

We really have under consideration here the old statute involving "any information" against the new rule which relates to "confidential communication." The appellant is the person who requested the treatment in this case. It would have been impossible for him to make a request without communicating in some manner with the party from whom he was requesting treatment. The myopic narrowness with which the majority now views confidential communications in fact destroys the rule in its entirety. If a medical technician is allowed to testify as to the description of the injuries or ailment or disease, even though the patient had requested it to remain confidential, it would in effect present a situation where there could be no "confidential communication." The situation existing here is one of the most personal types of cases that can be involved in a physician-patient relationship. To allow the state to poke its nose into

the privilege existing between the appellant and the person treating him for his condition would render the privilege meaningless. The purpose of the rule is to allow diagnosis and treatment of persons who can be confident that the intimate details of their physical or mental condition are not made public. I cannot see where the abrogation of this rule would enhance either the public interest or the criminal justice system.

The rules were very carefully thought out and were studied over a long period of time and were formulated specifically for the purpose of allowing privileged communications except for instances set out as exceptions in the rule. I feel that the sole reason for allowing in this particular communication was to enhance the state's probability of conviction. The state never claimed the matter was relevant to the defense of the crime or probative of any issue. This is not the purpose for which the rule was intended, and the state had as good a chance of conviction without this information as with it. I feel the original opinion was absolutely correct and if the present majority opinion prevails, then the rule may as well be stricken from the book. Therefore, I would deny the rehearing.