Roger Hale MARX *v.* STATE of Arkansas

CR 87-11                                                    724 S.W.2d 456

Supreme Court of Arkansas
Opinion delivered March 2, 1987
[Rehearing denied March 30, 1987.]

326

*Morgan E. Welch*, for appellant.

*Steve Clark*, Att'y Gen., by: *Mary Beth Sudduth*, Asst. Att'y Gen., for appellee.

DARRELL HICKMAN, Justice. Roger Hale Marx, the president of an asphalt construction company, stopped in a bar after work to meet a friend, Dr. Stan Heard, a chiropractor. Marx admitted to having three drinks. Dr. Heard left about 6 p.m., and a short time later Marx left for home. As Marx crested a hill in a residential area, Becky Moore, a thirteen year old, ran into the street and hit his vehicle. The impact threw her over the vehicle. Marx did not stop but continued on his way home. Steve Jordan saw Marx leave the scene of the accident, got in his vehicle and followed Marx to his house. Jordan yelled at Marx, who remained in his car, then returned to the accident scene and gave Marx's license number to the police. Marx went to his office and had an employee, Richard Evans, call the police. When the police arrived, Marx turned himself in. A breath test was administered and Marx registered .18% blood alcohol content. Becky Moore died three days later, and Marx was charged with manslaughter, leaving the scene of an accident, and driving while intoxicated. He was acquitted of manslaughter but convicted of leaving the scene and DWI. He was sentenced to four and a half years imprisonment for leaving the scene, one year for DWI and fined $10,000.

Marx argues on appeal that the court should have admitted the testimony of Dr. Heard regarding what Marx told him before the accident and the testimony of Richard Evans about what Marx said after the accident. Other issues raised relate to the certification of the breathalyzer, warnings given by the officers and instructions refused by the trial court. On appeal we view the evidence in the light most favorable to the state, and the judgment will be affirmed if there is any substantial evidence to support the verdict. *Lane* v. *State*, 288 Ark. 175, 702 S.W.2d 806 (1986).

Marx asserted the defense of duress to the charge of leaving the scene and the jury was instructed on this defense. Duress is defined in Ark. Stat. Ann. § 41-208 (Repl. 1977):

(1) It is an affirmative defense to a prosecution that the actor engaged in the conduct charged to constitute an offense because he reasonably believed he was compelled to do so by the threat or use of unlawful force against his person or the person of another that a person of ordinary firmness in the actor's situation would not have resisted.

(2) The affirmative defense provided by this section is unavailable if actor recklessly placed himself in a situation in which it was reasonably foreseeable that he would be subjected to the force or threatened force described in subsection (1) of this section.

Marx testified that he heard a scream and slowed down. He knew he had hit someone; however, he saw people rushing at him and left the scene. He said he thought he was going to be attacked. Then someone followed him in a car, and he panicked because he was afraid of being beaten.

Steve Jordan, who witnessed the accident, said he heard the impact, turned and saw Becky Moore on the ground, saw the driver look at Becky and then drive off. Jordan got in his car and followed Marx. He said Marx sped away and he had to drive 60 or 70 miles per hour in a residential area to keep up. He followed the vehicle to a house where it pulled in a driveway. He talked to Marx but neither of them got out of their cars. Jordan left to drive to the accident scene with Marx following, but after a few blocks, Marx was no longer in sight.

Another witness, Pam Howlett, said she saw Becky hit the car, saw the car keep going, waved at it, and when it didn't stop, got the license number and called the police.

Marx argues Dr. Heard's testimony regarding what Marx told him at their meeting prior to the accident should have been admitted. He told Dr. Heard about some personal problems: he said he was emotionally upset, because he might lose his business; a burglar had recently broken into his home, he had shot the burglar and feared retribution; and he said his mother had been run over by a car only a week before. Dr. Heard attempted to

testify to this conversation at trial, but the state objected because it was hearsay. Marx argued it was admissible as a present sense impression, an exception to the hearsay rule. The trial court ruled the testimony inadmissible, and he was right in this regard.

A present sense impression is "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." A.R.E. Rule 803(1). A present sense impression must describe or explain the event the declarant is perceiving. D. Binder, *Hearsay Handbook*, 2nd. Ed. § 101 (1983). The statement must be made while the event or condition is being perceived by the declarant. 4 Weinstein, *Evidence*, § 803(1)[01] (1985). The statement is required to be contemporaneous or near contemporaneous with the event. Binder, *supra.*

A good example of a present sense impression is found in *Brown* v. *Tard*, 552 F. Supp. 1341 (D.C.N.J. 1982). A maintenance worker in an apartment building was convicted of murdering a tenant's live-in girlfriend. The tenant testified that on the morning of the murder his girlfriend called him and told him that she was not going to work and that "the guy is here to fix the air conditioner."

Marx's statement to Heard occurred about an hour before the accident and was not an impression Marx had related to leaving the scene of the accident. The trial judge determines whether evidence is admissible and on review we reverse the decision only if there is an abuse of discretion. A.R.E. Rule 104(a); *White* v. *Mitchell*, 263 Ark. 787, 568 S.W.2d 216 (1978). We find that the trial judge did not abuse his discretion by finding this was not a present sense impression and excluding the testimony.

While Marx mainly argued at trial and on appeal Heard's testimony was admissible as a present sense impression, he explicitly argues for the first time that this testimony was also admissible under A.R.E. Rule 803(3) to show Marx's mental condition at the time of the accident. The exception to the hearsay rule provides evidence is admissible showing the "[t]hen existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive, design, mental

feeling, pain, and bodily health, but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will." The state asserts this argument was not raised at trial, and therefore cannot be considered on appeal. *Hill* v. *Bentco Leasing, Inc.*, 288 Ark. 623, 708 S.W.2d 608 (1986). However, we believe Marx essentially made this argument to the trial court because the trial judge, in his summation of the long argument made by appellant, said:

> The Defense states it's going to offer this to show his mental condition at the time to show that he reasonably believed he was compelled to leave the scene of the accident. Because he reasonably believed that he was compelled to leave by the threat or use of unlawful force against his person.

Marx argues the testimony was necessary to show the jury what *his* peculiar situation was at the time of the accident in connection with his defense of duress. Heard's testimony was relevant to show Marx's mental and emotional condition at the time of the accident; that the combination of his troubles caused Marx to believe that outside forces were closing in on him and threatening his security, compelling him to leave the scene of the accident when the bystanders ran towards him. The trial court correctly ruled the testimony inadmissible.

Our duress statute is similar to the Model Penal Code proposal for duress which provides for the defense in cases where the actor was coerced by force or threats of force "which a person of reasonable firmness in his situation would have been unable to resist." Model Penal Code § 2.09 (Proposed Official Draft 1962). The defense of duress requires that "at the time of the conduct constituting the offense [in this case, leaving the scene] the actor suffers an impairment of his ability to control his conduct such that he cannot properly be held accountable for it." 2 P. Robinson, *Criminal Law Defenses* § 177 (f) (1984).

The standard used to measure a person of ordinary firmness takes into account the actor's "situation." Factors to be considered in determining that situation are those that differentiate the actor from another, such as size, strength, age or health; matters of temperament are not considered. Model Penal Code §

2.09 notes on status of section (Tentative Draft No. 10 (1960)). For example, if the actor were blind or if he had just suffered a blow or experienced a heart attack, these would certainly be facts to be considered, but heredity, intelligence or temperament of the actor would not. Model Penal Code § 2.02 notes on status of section (Tentative Draft No. 4 1955).

Disabilities relevant to the defense are discussed in 2 P. Robinson, *Criminal Law Defense* § 177 (c) (1) (1984):

> * * * In duress, however, the disability — the state of coercion — may have few external manifestations and may dissipate immediately, leaving little trace of its former influence on an otherwise normal defendant. For these reasons, no doubt, most duress formulations require objective proof of the *cause* of the state of coercion. This means in practice that the coercion must be the result of a sufficiently grave threat of harm.
>
> Such evidence of the cause of the disability serves the same function in duress as evidence of the disability in other excuses, such as extreme psychosis as the disability in insanity. The evidence assures the community that the disability existed; it distinguishes the coerced defendant from the general population; and it supports the claim of an existing condition, a sufficient impairment of control. The Commentary to the Model Penal Code duress excuse explains this requirement of an objective cause for the state of coercion in terms of society's 'unwillingness to vary legal norms with the individual's capacity to meet the standards they prescribe, absent a disability that is both gross and verifiable * * *.'"

In § 177 (c) (3), Robinson elaborates further on the reason for an objective standard:

> It may seem that duress is unique among excuses in requiring that the threat causing the disability meet an objective standard. For instance, as long as an actor is involuntarily intoxicated to an extent that satisfies the excusing condition of impairment of control, the intoxication excuse is not withheld because the amount of drugs slipped into his drink is insufficient to grossly intoxicate the

person with a reasonable tolerance to such drugs. Likewise, if an actor is insane, society does not inquire whether the factors responsible for the insanity would have had the same effect on the person of reasonable sensibilities. But the special objective restriction on the cause of the disability in duress is necessary to ensure conformity with a characteristic that is inherent in the other excuses. But requiring that an actor be intoxicated or insane, those excuses automatically ensure that an excuse will be available only for defendants with a demonstrable defect that distinguishes them from the general population. In contrast, the bare, unqualified disability in duress, a state of coercion, carries no such assurance; everyone is subject to pressures, demands, and urges every day.

Mistake and duress are similar in that in both cases the actor is a normal person, one who cannot be distinguished by either a physical or mental defect. Both kinds of actors must therefore demonstrate that special circumstances, for which they are not responsible, caused their conduct, and would have induced the same conduct by the reasonable person. In the case of duress, the special circumstances are a threat that would create a state of coercion in the reasonable person that would cause him to succumb. As discussed in Subchapter C of this chapter, in the case of mistake, there is no disability, but the special circumstances are such that the reasonable person would not have known of the wrongfulness or criminality of their conduct. The phrase 'person of reasonable firmness' is employed in the duress disability to emphasize the characteristic of the reasonable person that is most relevant.

*Arizona* v. *Starks*, 122 Ariz. 531, 596 P.2d 366 (1979), is a case in point. The defendant Starks was charged with armed robbery. He and a co-defendant were being transferred from a pretrial hearing to jail; the co-defendant was handed a gun by his wife, and then ordered Starks to disarm the guard and remove his personal property. Starks complied. When two other people walked into the area, they were also robbed. At Starks' trial he sought to introduce the testimony of his psychiatrist that he, Starks, suffered from temporal lobe epilepsy and was mentally retarded, and due to his mental condition, was susceptible to

threats. The Arizona court held this testimony was inadmissible because "[o]nce the defendant asserts that he was in fact in fear, his conduct is then judged by an objective standard. The defendant's offer of proof clearly indicates that Dr. Garcia-Bunuel's testimony delved into the defendant's subjective mental state and was therefore properly excluded." The Arizona court used an objective not a subjective standard for the defense of duress. Cf., *United States* v. *Hearst*, 412 F. Supp. 889 (D.C. Cal. 1976) (held that expert psychiatric testimony was admissible to explain the effects that kidnapping, prolonged incarceration, and psychological and physical abuse may have had on the defendant's mental state at the time of the bank robbery where the defense was coercion or duress.); Annot., 1 A.L.R. 4th 481 (1980).

■ The testimony of Dr. Heard is inadmissible because it concerns Marx's mental or emotional condition and that is purely subjective and irrelevant in this case to the defense of duress. The testimony that Marx had been burglarized, shot the burglar, feared retribution, his mother's car accident, and his business trouble may illustrate Marx's mental or emotional condition at the time of the accident, but the testimony does not show that a person of ordinary firmness with these concerns would have left the scene of the accident. Everyone has problems, concerns and troubles. From an objective standard, Marx's problems do not differentiate him from the rest of us. Therefore, the trial court correctly ruled the testimony inadmissible.

■ Marx also proffered the testimony of Richard Evans whom Marx told after the accident that he thought the bystanders at the accident were going to beat him. That is why he left the scene. Marx claims the statement was made only 27 minutes after the accident, and therefore admissible as an excited utterance, an exception to the hearsay rule. A.R.E. Rule 803(2). An excited utterance is a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. A.R.E. Rule 803(2).

■ The trial judge, after hearing the testimony and considering the circumstances, decided this statement was not an excited utterance, instead he characterized it as self-serving. The trial judge observed that the statement was made about one hour after the accident. We are unable to determine from the record

exactly when the statement was made or how Marx determined it was made 27 minutes after the accident. However, it was for the trial court to determine if the statement was made under the stress of excitement, an excited utterance, or after Marx had calmed down. We cannot say the trial judge abused his discretion in ruling the testimony inadmissible. A.R.E. Rule 104(a), *White v. Mitchell, supra.*

Marx objected to the admission of the breath test results, which showed he registered .18% blood alcohol content, arguing the machine was not certified in compliance with regulatory procedures. The defense argued a monthly proficiency report had not been filed for June. A health department regulation requires proficiency reports to be filed with the department monthly. The state proved the machine was certified from April 1, 1985, through July 1, 1985. Monthly proficiency reports were filed for April and May. A spot check on June 11, the date of this test, was recorded on the police records. We have held repeatedly that only substantial compliance with health department regulations is required. *Sparrow v. State*, 284 Ark. 396, 683 S.W.2d 218 (1985). The trial judge ruled the test results admissible and we find no abuse of discretion.

Marx objected to the testimony of Gay Horn, a health department official who was called to testify about the department's records on this machine. She was not disclosed by the state as a witness. A.R.Cr.P. 17.1(a)(1) requires the state to provide the defense with the names of witnesses it intends to call. The trial judge ruled the defense was not surprised, because the defense had talked to her prior to the trial. *Martinez v. State*, 269 Ark. 231, 601 S.W.2d 576 (1980). Also, Horn was called only after the defense asserted the need for an official to testify about the monthly proficiency reports. *Parham v. State*, 262 Ark. 241, 555 S.W.2d 943 (1977). The state had met its burden before she was called. We find no prejudicial error. *Vasguez v. State*, 287 Ark. 468, 701 S.W.2d 357 (1985).

Marx argues his constitutional right to counsel was violated because the breath test was given without counsel and the police failed to properly advise Marx of his right to a second test. There is no constitutional right to counsel in connection with this test. *Wells v. State*, 285 Ark. 9, 684 S.W.2d 248

(1985). The police advised Marx of his right to take a second test before he took the test and Marx signed the rights form. The police complied with Ark. Stat. Ann. § 75-1045(c)(3) (Supp. 1985). *Sparrow* v. *State, supra.*

■ Various instructions offered by the defense were properly refused because they were covered by instructions given by the trial court. *Conley* v. *State*, 270 Ark. 886, 607 S.W.2d 328 (1980). The trial court is not required to give multiple instructions stating the law in various ways. *Butler* v. *State*, 261 Ark. 369, 549 S.W.2d 65 (1977).

Affirmed.