Lowell Wayne "Sonny" BARKER *v.* STATE of Arkansas

CA CR 86-167 728 S.W.2d 204

Court of Appeals of Arkansas
Division II
Opinion delivered April 29, 1987]
[Rehearing denied May 27, 1987.]

58

*William C. McArthur*, for appellant.

*Steve Clark*, Att'y Gen., by: *William F. Knight*, Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. Appellant was charged with the first degree murder of Barry Baker. The men engaged in a fight during which Baker received twenty-three stab wounds, three of which were serious enough to cause his death. After the fight, Baker drove to the Searcy police station where he collapsed in the parking lot. He died later that night at the hospital. The jury found appellant guilty of murder in the second degree and fixed his punishment at 20 years in the Department of Correction and a fine of $15,000.00. One of the points raised in this appeal is the sufficiency of the evidence.

In *Harris v. State*, 284 Ark. 247, 681 S.W.2d 334 (1984), the Arkansas Supreme Court held that when there is a challenge to the sufficiency of the evidence, we must review that point prior to considering any alleged trial errors and, in doing so, we must consider all the evidence, including any which may have been inadmissible, in the light most favorable to the appellee.

There is evidence in the record showing that Julie Underhill had been dating Baker for several years. She claimed appellant

had been harassing her for some months, following her frequently, and annoying her at work. On October 23, 1985, Ms. Underhill saw appellant near a car wash in Searcy while she was washing her car. She thought he was following her and she called the police. Officer Gary Hogue responded and stayed with her until she finished washing the car. She then drove to Baker's home in Bald Knob and told him that the appellant was bothering her again. Baker left to find appellant and was next seen at the Searcy police station with the multiple stab wounds.

Appellant testified that he was going about his business on October 23, 1985, when a car began following him very close to his rear bumper. He said he attempted to lose it but could not, so he drove out into the country. On Fairview Road, the car attempted to pass and pulled up beside him. They were approaching a one-lane bridge so appellant stopped and the other car did too. Appellant said that both men got out of their cars and, after they exchanged some words about the car-wash incident, Baker hit him and they began to fight. Appellant testified that he attempted several times to get away but Baker kept on coming. He said that after Baker had got him down and banged his head against the ground, he got loose and pulled out his pocket knife and threatened Baker with it if he did not stop. He said Baker just stood there for a moment looking at him, then jumped him again. Appellant testified that he went down on his back and stuck Baker in the stomach. They rolled around and he guessed he cut Baker in the back a few times. He then broke free and tried to walk away, but Baker jumped on his back and drove his face into the ground. Appellant said his nose began to bleed; they rolled around some more; Baker got on top and had his hands against appellant's face and he could not breathe, so he struck up at Baker twice and guessed he hit him with the knife somewhere in the side. He started "poking" at Baker and finally got loose. Both men then jumped up and Baker got in his car, turned it around in the road and left the scene. The autopsy showed that Baker's jugular vein had been severed, his lung, spleen and liver had been punctured, and that he bled to death.

Appellant went to a car wash and cleaned up some, went to the house of a friend, who testified he helped stop appellant's nose bleed, and after 15 to 20 minutes, appellant went to his brother's house where he was taking a bath when police arrived and

arrested him. There was testimony by a doctor, who examined appellant shortly after his arrest, that appellant had no cuts, abrasions, or lacerations that required treatment or attention.

■■ The drawing of inferences from the testimony is for the jury and it has the right to accept such portions of the testimony as its members believe to be true and reject those they believe to be false. *Richie v. State*, 261 Ark. 7, 545 S.W.2d 638 (1977); *see also Faulkner v. State*, 16 Ark. App. 128, 132, 697 S.W.2d 537 (1985). In viewing the evidence on appeal, we look at it in the light most favorable to the appellee, *Stout v. State*, 263 Ark. 355, 565 S.W.2d 23 (1978), and the evidence is sufficient if the jury's verdict is supported by substantial evidence. *Milburn v. State*, 262 Ark. 267, 555 S.W.2d 946 (1977).

■■ A person commits murder in the second degree if he knowingly causes the death of another person under circumstances manifesting indifference to the value of human life, or with the purpose of causing serious physical injury to another person, he causes the death of any person. Ark. Stat. Ann. § 41-1503(1)(b) and (c) (Repl. 1977). Appellant claimed the defense of justification, contending he believed the use of deadly force was necessary to defend himself from Baker's attack. This defense is afforded under Ark. Stat. Ann. § 41-507 (Repl. 1977), but the statute requires that there be a reasonable belief that the situation necessitates the defensive force employed and the defense is available only to one who acts reasonably. *Kendrick v. State*, 6 Ark. App. 427, 431, 644 S.W.2d 297 (1982).

■ Considering the number and extent of the wounds inflicted by appellant, his own testimony that he got completely loose from Baker one time before pulling his knife, the fact that there is no mention of any weapon in Baker's possession, the evidence of no sign of injury to appellant, and the fact that 14 of the 23 stab wounds received by Baker were in his back, we think there is substantial evidence from which the jury could find the appellant guilty of murder in the second degree.

Appellant's first point on appeal is that the trial court erred in excusing a prospective juror for cause. During voir dire, one man indicated that he would have great difficulty in voting to send someone to prison. The prospective juror was excused for cause at the request of the prosecution, and the trial court stated it was

because the man seemed to have difficulty with his answers to some questions on voir dire and because he had made a disclosure on his questionnaire that he had been involved in some sort of criminal trial other than traffic but did not disclose what kind. Appellant argues there was no showing of bias and this juror should not have been excused.

The determination of the existence of actual bias is a matter for the trial court and we will not reverse absent an abuse of discretion, *Henslee* v. *State*, 251 Ark. 125, 127, 471 S.W.2d 352 (1971), which must be demonstrated by the appellant, *McFarland* v. *State*, 284 Ark. 533, 548, 684 S.W.2d 233 (1985). The state is, of course, entitled to a fair and impartial jury. *Stephens* v. *State*, 277 Ark. 113, 115, 640 S.W.2d 94 (1982). When actual bias is in question, the qualification of a juror is within the sound discretion of the trial judge because he is in a better position to weigh the demeanor of the prospective juror and his response to the questions on voir dire. *Linell* v. *State*, 283 Ark. 162, 164, 671 S.W.2d 741 (1984). The record shows that the prospective juror here told the prosecuting attorney he did not think he could ever sentence someone to the penitentiary and that it would make him uncomfortable to have to consider a range of punishment of from ten to forty years or life in prison. A prospective juror need not admit bias before the court may excuse him. *Fleming* v. *State*, 284 Ark. 307, 310, 681 S.W.2d 390 (1984). We cannot say the court abused its discretion in excusing this prospective juror in the instant case.

Next, appellant argues the trial court erred in allowing into evidence a tape recorded statement made by Baker. When Baker arrived at the Searcy police department, officers immediately determined his injuries were extremely serious. One officer observed blood spurting from Baker's neck. A tape recorder and camera were obtained and Baker's comments were recorded while officers and emergency medical technicians were attempting to control his bleeding. During this time Baker named appellant as his assailant, said they had been having problems over a girl, and that he did not know what had been used on him or how badly hurt he was until "now." Several people testified to Baker's statements and the tape recording was played for the jury. Appellant argues the trial court erred in admitting this recording either as a dying declaration or an excited utterance.

We find no error.

A.R.E. Rule 804(b)(2) provides:

(b) Hearsay Exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(2) Statement under belief of impending death. A statement made by a declarant while believing that his death was imminent, concerning the cause or circumstances of what he believed to be his impending death.

Appellant asserts Baker did not know he was dying. The record discloses, however, that Baker made statements several times to officers and medical personnel such as, "Please don't let me die" and "Oh God, Oh God." These statements could certainly be considered as evidence that he understood the gravity of his situation. To be admissible under this exception, the belief of imminent death need not be shown by the declarant's express words alone. It can be supplied by inferences fairly drawn from his condition. *Boone* v. *State*, 282 Ark. 274, 279, 668 S.W.2d 17 (1984).

We think the statements were also admissible as excited utterances, defined by A.R.E. Rule 803(2) as "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Appellant suggests too much time had elapsed after the fight for this exception to apply. However, Baker was severely wounded, bleeding profusely, in pain and dying from injuries he had quite recently received in a fight. Clearly the court could find that he was still under the stress of the event. Preliminary questions concerning the admissibility of evidence are determined by the trial court under the provisions of A.R.E. Rule 104. We find no error in the court's ruling allowing the introduction of the recorded statement of Baker.

Next, appellant argues the trial court erred in allowing into evidence pictures taken of Baker in the police station parking lot, at the hospital, and at the autopsy. Appellant concedes that some of the pictures were admissible to illustrate the severity of the wounds. He argues, however, that pictures taken at the hospital

and the morgue were not admissible because they were highly prejudicial, inflammatory, and did not represent the true nature of Baker's wounds because of medical and surgical procedures performed in an attempt to save his life. Appellant contends the probative value of these pictures was far outweighed by the danger of prejudice and of confusing and misleading the jury. *See Fisher* v. *State*, 7 Ark. App. 1, 643 S.W.2d 571 (1982); A.R.E. Rule 403.

 The admissibility of photographs is within the sound discretion of the trial court and it will not be reversed absent a manifest abuse of that discretion. *Henderson* v. *State*, 279 Ark. 414, 420, 652 S.W.2d 26 (1983). A photograph is admissible to corroborate the testimony of a witness, show the nature and extent of the wounds or the savagery of an attack, or when useful in enabling a witness to better describe objects portrayed or the jury to better understand the testimony. *Earl* v. *State*, 272 Ark. 5, 10, 612 S.W.2d 98 (1981). We think the photographs taken at the hospital were admissible to show the extent of the wounds because the neck, back and abdominal wounds were not observable in the pictures taken in the parking lot. In addition, the chief medical examiner of the Arkansas Crime Lab, who made photographs during the autopsy performed by him, testified that those photographs would help him demonstrate the nature and extent of the wounds. He said this is an instance in which we have to know where the real stab wounds are and what has been done in surgery to understand the nature of the wounds, and he pointed out clearly which were original wounds and which were alterations made by the medical procedure in the hospital. Furthermore, it is evident that the trial judge did exercise discretion in admitting the photographs because he refused to admit some that were offered.

 Simply because photographs are gruesome is insufficient reason to exclude them. *Smith* v. *State*, 282 Ark. 535, 540, 669 S.W.2d 201 (1984). Even inflammatory photographs are admissible in the sound discretion of the trial court if they tend to shed light on any issue or are useful to enable the jury to better understand or corroborate the testimony. *Fairchild* v. *State*, 284 Ark. 289, 293, 681 S.W.2d 380 (1984). We find no error in the introduction of the pictures of Baker.

██ Appellant's next argument is that the trial court erred in admitting into evidence a knife found at his brother's house when the appellant was arrested. The knife was found on the cabinet in the bathroom where appellant was bathing, along with a blood-stained shirt and jeans. Although the crime lab was unable to detect any blood on the knife, the medical examiner testified that the victim's wounds were consistent with those which would have been inflicted by that kind of knife. At trial appellant said he did not know if that was his knife but it looked like his and could be the one he injured Baker with. On appeal, appellant contends the knife was not properly identified, no corroboration was presented that connected it with the crime, and that its probative value was outweighed by its prejudicial effect. It is well established that the determination of the relevancy of evidence is within the trial court's discretion and that the appellate court will not reverse absent a showing of abuse of that discretion. *James v. State*, 11 Ark. App. 1, 8, 665 S.W.2d 883 (1984). Even if this knife were not the fatal weapon, the similarity between it and the weapon used would make appellant's identity as the attacker more probable than it would be without the evidence. *See Fountain v. State*, 273 Ark. 457, 461, 620 S.W.2d 936 (1981). We find no error in admitting the knife into evidence.

██ Appellant also argues that the trial court erred in allowing Dr. Randy McComb to testify in violation of the physician-patient privilege. After appellant's arrest he was taken to the emergency room at the White County Memorial Hospital to be examined for injury. At trial, the emergency room physician, Dr. McComb, testified he found no serious injuries when he examined the appellant and saw no cuts, abrasions, or lacerations that needed treatment or attention. The appellant contends this testimony violated the physician-patient privilege as set out in *Baker v. State*, 276 Ark. 193, 637 S.W.2d 522 (1982). We do not agree. In that case, the Arkansas Supreme Court made it clear that under A.R.E. Rule 503 "the real protection is aimed at preventing a doctor from repeating what a patient told him in confidence." The emergency room doctor did not testify to any confidential information given to him by the appellant in this case. But appellant contends that when the Arkansas Supreme Court held the Uniform Rules of Evidence had been unconstitutionally adopted, *see Ricarte v. State*, 290 Ark. 100, 717 S.W.2d

488 (1986), it reinstated the broader previous law which encompassed all conceivable information a physician could have about a patient. *See National Benevolent Society* v. *Barker*, 155 Ark. 506, 244 S.W. 720 (1922). Suffice it to say that appellant did not object to the doctor's testimony on this ground at the trial and did not submit this argument to the trial court. In *Halfacre* v. *State*, 290 Ark. 312, 718 S.W.2d 945 (1986), the court held that *Ricarte* v. *State* "does not provide a remedy unless the issue of the validity of the uniform rules was raised in the trial court." *See also Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980).

 Next, appellant argues that the trial court erred in allowing the state to cross-examine a defense witness about his knowledge of two misdemeanor convictions appellant had for harassing Julie Underhill. Mickey Smith, a defense witness, had testified that appellant had a reputation for being a quiet, peaceful man. On cross-examination, the state inquired whether the witness was aware of the two convictions. Appellant argues this questioning violated A.R.E. Rule 609, which provides certain limitations on impeachment by evidence of conviction of a crime. Again, we disagree. Rule 609 applies only when one is attempting to show that the witness himself has been convicted of a crime. Applicable to the situation at hand is A.R.E. Rule 405(a) which provides that when evidence of character or a trait of character of a person is admissible inquiry may be made on cross-examination into relevant specific instances of conduct. The distinction between these two rules was explained in *Reel* v. *State*, 288 Ark. 189, 702 S.W.2d 809 (1986):

> The policies behind rule 405(a) are, however, distinguishable from those underlying rule 609(a). The purpose of the cross examination of a character witness with respect to a prior offense is to ascertain the witness' knowledge of facts which should have some bearing on the accused's reputation. If the witness does not know that an accused was previously convicted of a crime, the witness' credibility suffers. If he knows it but then disregards it in forming his opinion of the accused, that may legitimately go to the weight to be given the opinion of the witness.

288 Ark. at 191. *See also Wilburn* v. *State*, 289 Ark. 224, 711 S.W.2d 760 (1986) (holding that by producing a character

witness the appellant opened the door to evidence which might otherwise have been inadmissible). As pointed out in *Reel* v. *State*, an instruction limiting the use of the information gained by the cross-examination of the character witness would assist the jury in placing the testimony in its proper light. That, however, was not made an issue in the present case.

Finally, appellant argues that it was error to deny the admission of testimony by his brother and sister-in-law that when appellant appeared at their house he said that Baker chased him, ran him off the road, and persisted in giving him a beating. He contends these statements were "excited utterances" and admissible under A.R.E. Rule 803(2). In the first place, the abstract does not show that these witnesses were ever asked questions that would have elicited this information. Furthermore, we do not find a proffer of the testimony they would have given. There must, of course, be a proffer of the evidence excluded for us to find error, *Duncan* v. *State*, 263 Ark. 242, 565 S.W.2d 1 (1978), unless its substance was apparent from the context within which the questions were asked, A.R.E. Rule 103(a)(2). However, even if we accept what appellant says in his argument would have been the testimony of his brother and sister-in-law, we find no error in denying its admission into evidence.

In *Tackett* v. *State*, 12 Ark. App. 57, 670 S.W.2d 824 (1984), we said the basis of this exception to the hearsay rule is that a person who experiences a startling event and is still under the stress of the excitement of the event when statements are made by him will not make false statements. The evidence here discloses that a substantial amount of time had passed between the fight and appellant's arrival at his brother's home. Appellant had driven into town, had cleaned his face at a car wash, had driven to Mickey Smith's house to tell him about the incident and see what he had to say about it, and after 15 or 20 minutes at Smith's house, had driven to the brother's house but had presence of mind enough to throw a handgun out of the car window before arriving there.

In *Marx* v. *State*, 291 Ark. 325, 724 S.W.2d 456 (1987), the Arkansas Supreme Court said "it was for the trial court to determine if the statement was made under the stress of excitement, an excited utterance, or after Marx had calmed

down." 291 Ark. at 334. Under the circumstances in the case at bar, we do not think the trial court abused its discretion in refusing to admit the testimony it is suggested would have been given by appellant's brother and sister-in-law. *Marx* v. *State*; A.R.E. Rule 104(a).

Affirmed.

COOPER and COULSON, JJ., agree.