STATE OF NORTH DAKOTA, Respondent, v. EARL MOORE, Appellant.

(204 N. W. 341.)

**Witnesses — admitting testimony of physician that accused had venereal disease held error.**

In a prosecution for rape where defendant, while in custody, was examined by a physician at the request of the sheriff, for the purpose of ascertaining whether defendant was afflicted with a venereal disease, and where the physician examined defendant, found that he was afflicted with a venereal disease and thereafter treated him therefor, and where, at the trial, such physician's testimony was received in evidence over the objection of defendant upon the ground

that the same was privileged, it is held, that the trial court, upon the record and for reasons stated in the opinion, erred in receiving such testimony

Opinion filed December 31, 1924, on rehearing May 25, 1925.

Witnesses, 40 Cyc. p. 2382 n. 29, 30, 31; p. 2383 n. 32, 33; p. 2384 n. 46; p. 2385 n. 49; p. 2388 n. 83; p. 2395 n. 47.

In District Court, Grand Forks County, *Englert,* J.
Prosecution for rape.
Defendant has appealed from judgment of conviction.
Reversed and new trial granted.
*H. C. DePuy,* for appellant.
*T. I. Dahl,* State's Attorney, for respondent.

BRONSON, Ch. J. This is a prosecution for rape. Defendant was found guilty of rape in the second degree and sentenced for a term of 25 years in the state penitentiary. He has appealed from the judgment of conviction. The material facts are:—In 1921 one Swehla operated a farm in Walsh county. With him lived his wife and his young daughter, aged six years. During the year defendant, then aged 23 years, worked for Swehla as a farm hand. This employment continued with some intermission, until about the month of April, 1922, when it was abrupted through some trivial disagreement. Defendant, however, remained in the neighborhood for several weeks. Shortly before defendant left, the young daughter of Swehla evidenced signs of venereal disorder. Her parents caused an examination to be made by physicians. It was discovered that she was suffering with syphilis. Defendant was arrested for the crime of rape upon this young daughter. The first trial resulted in a disagreement. In this, the second trial, held in Grand Forks county, commencing on June 14th, 1923, the daughter was a witness. Her testimony was to the effect that on two different occasions, once in the cow barn and once in the horse barn, the defendant attempted to have, or did have, partial sexual intercourse with her. Testimony was also afforded through physicians and scientific agencies that the daughter was afflicted with syphilis in her private parts, perhaps occasioned by attempts at sexual intercourse.

After defendant was arrested and while he was confined in the

county jail, before hearing or trial, the sheriff, in whose custody defendant was, received rumors to the effect that defendant was affected with a venereal disease. Accordingly, he called a physician for the purpose of examining defendant in order that he might protect himself as well as the prisoners if defendant was so affected. He called the physician without defendant's request but so far as defendant knew the physician was brought over for the purpose of treating him in the event that it was discovered that he required treatment. The physician who was called testified that he examined defendant for the purpose of determining whether he had a veneral disease; that he was called for that purpose by the sheriff. The physician advised defendant that his understanding of the law was that if he made the examination he (the physician) could not divulge the knowledge that he gained. The physician further testified that he went there for the purpose of treating defendant professionally if he was infected. The physician examined defendant, took a specimen of his blood, which was sent away for laboratory test. The report thereon was to the effect that defendant was afflicted with syphilis. As the sheriff testified, this physician subsequently treated defendant. Defendant did not testify.

Upon this appeal the major contention made by the defendant is that the trial court erred in receiving the testimony of the physician concerning his examination made of the defendant upon the ground that such testimony was privileged and further violated defendant's constitutional rights.

## Opinion.

The statute provides that a physician or surgeon cannot, without the consent of his patient, be examined as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient. Comp. Laws 1913, § 7923. A further statute provides that the rules of evidence in civil cases are applicable also in criminal cases except as otherwise provided in the code of criminal procedure. Comp. Laws 1913, § 10,838.

The state justifies the admission of the physician's evidence upon the ground that the physician was not called for the purpose of treating defendant but for the purpose of protecting the sheriff and those

under his charge against contagious diseases pursuant to a power possessed by him under State Health Regulations; that defendant voluntarily consented to the examination; and that, in any event, the testimony received does not show that defendant was entitled to the statutory exemptions concerning a privileged communication for the prime reason that the testimony concerned was not obtained in order to enable the physician to prescribe or act for the defendant as his patient and for the secondary reason that the statute above quoted is not applicable in criminal actions.

We are of the opinion that the trial court erred in receiving the physician's testimony concerning the defendant's examination made while he was in custody and that the state's position upon the record cannot be justified. The record is insufficient to justify any inference that the defendant voluntarily consented to his examination so as to waive the protection of the statute. The physician's testimony, taken in connection with the testimony of the sheriff, discloses that he attended defendant as his patient and from information gained by his examination of defendant he thereafter prescribed and acted for defendant as his patient. In other words, the record sufficiently shows that the physician consulted defendant as a patient in a professional character, and that the consultation included the purpose of rendering curative or alleviative treatment for the defendant. See 5 Wigmore, Ev. 2d ed. § 2382. The physician's statements made to the defendant concerning the character of his call served to advise defendant and to indicate to him that the consultation would be of a professional character. Upon the record the situation was not similar to the case where a physician was called to examine a defendant while in custody and where the defendant was told that the physician had been sent by the prosecuting attorney for the specific purpose of examination. People v. Glover, 71 Mich. 307, 38 N. W. 874. Nor to a situation where a physician testifies concerning an admission made by defendant in a non-professional transaction or occurrence. See State v. Werner, 16 N. D. 83, 93, 112 N. W. 60. On the contrary, the record presents a situation more comparable to the case where a physician, called for the purpose of ascertaining, for a railway company, the condition of the plaintiff, proceeded to advise and administer treatment and thus to assume the relation of physician and patient. Battis v. Chicago, R. I.

& P. R. Co. 124 Iowa, 623, 100 N. W. 546. Accordingly, upon this record we are of the opinion that the examination and consultation had by the physician, pursuant to the representations made, advice given, and action taken, disclosed a purpose to act in a professional capacity so as to create the relation of physician and patient between the doctor and defendant. Thus the inhibition of the statute applies. See Epstein v. Pennsylvania R. Co. 250 Mo. 1, 48 L.R.A.(N.S.) 394, 408, 156 S. W. 699, Ann. Cas. 1915A, 423; Booren v. McWilliams, 26 N. D. 558, 577, 145 N. W. 410, Ann. Cas. 1916A, 388; Auld v. Cathro, 20 N. D. 461, 32 L.R.A.(N.S.) 71, 128 N. W. 1025, Ann. Cas. 1913A, 90; Massachusetts Mut. L. Ins. Co. v. Michigan Asylum, 178 Mich. 193, 51 L.R.A.(N.S.) 22, 144 N. W. 538, Ann. Cas. 1915D, 146; Price v. Standard Life & Acci. Ins. Co. 90 Minn. 264, 95 N. W. 1118; 40 Cyc. 2385. It will serve no useful purpose through reasons of expedition to consider the beneficent or harmful results of the statute in either protecting the rights of liberty or inhibiting proofs of crime. The statute is mandatory in its character. It is the duty of courts to apply this statute when facts evidence themselves to justify its application. In our opinion the physician's testimony as received was privileged and inadmissible. A new trial must be granted. It is so ordered.

BIRDZELL and JOHNSON, JJ., concur.

CHRISTIANSON, Ch. J. (dissenting). The controlling question in this case is whether the trial court erred in admitting in evidence, over the objection of the defendant, the result of the Wasserman test as applied to the defendant while he was an inmate of the county jail. The admissibility of this evidence is governed by § 7923, Comp. Laws 1913 which, so far as material, reads as follows:

"A person cannot be examined as a witness in the following cases:

. . .

3. A physician or surgeon cannot, without the consent of his patient, be examined as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient."

According to the plain language of the statute the privilege prescribed thereby arises only where the relation of physician and patient

exists. That is, the testimony of a physician is not to be excluded unless it appears that the relation of physician and patient existed at the time the physician obtained the information concerning which he is asked to testify. 28 R. C. L. 532.

Cyc. (40 Cyc. pp. 2384, 2385) says: "There is no privilege as to information acquired by a physician by the examination of a person, unless such examination is made in contemplation of and as a preparation for professional treatment."

The only question in this case is whether the relation of physician and patient existed at the time the physician obtained the specimen of defendant's blood to be used in applying the Wasserman test. If that relation existed, then the testimony of the physician and the result of the Wasserman test obtained from such specimen, is in my opinion, privileged. But under the evidence in this case I do not believe that this court is justified in holding that the trial court was in error when it held that such evidence was not privileged. The defendant had the burden of showing that the relation of physician and patient existed and that the testimony was privileged. 28 Cyc. p. 2395. The defendant did not testify, and the only evidence as to what was said and done at and prior to the time the specimen of blood was obtained is the testimony of the sheriff and the doctor. The sheriff testified: "I was told that Moore had a venereal disease, and I had him upstairs, and I didn't know whether he did or not, and I wanted a doctor to examine him, so, if it was contagious, I would know what to do to protect myself, as well as the prisoners." The sheriff further testified that he asked Moore as to whether he was or was not afflicted with venereal disease and that Moore said in reply, "I don't know whether I have or not,— I don't believe I have. I don't know." And that he (the sheriff) said "If there is anything in this jail that I don't know nothing about I wouldn't want it to spread in here and I will get a doctor," or something to that effect; that he procured a doctor without asking the defendant whether he desired to have this done or not; that at the time he procured the doctor he (the sheriff) did not have in mind to procure a physician to treat the defendant and said nothing to the defendant or the doctor about that. The doctor testified that he was called by the sheriff to examine the defendant "so he could take proper precautions to protect the other prisoners;" that the sheriff said nothing about treat-

ment of the defendant. The doctor related fully the conversation had with the defendant at the time of the examination. From this testimony it does not appear that anything was said with respect to treatment. The doctor, it is true, informed the defendant that he believed that under the law he (the physician) would not be permitted to testify to the result of his examination or the result of the blood test; but it is equally true that the doctor suggested to the defendant that the examination made at that time might be very injurious to his case and that he (defendant) had better consult with his attorney before permitting the examination to be made. There is not the slightest indication that the examination was made against the will or without the consent of the defendant. It appears, on the contrary, that he consented thereto with full knowledge of the conditions under and the reasons for which it was made. It is true that the physician a week or so later gave medical treatment to the defendant; but, obviously, this did not render inadmissible his testimony as to what occurred before that relation was created.

"It is well settled that in order for privilege to exist in the case of a communication made to or by a physician or surgeon, the relation of physician and patient must exist between the physician and the person by or to whom the communication is made. Where there is no confidential relation, there is no privilege. The privilege extends only to information acquired during the continuation of the relation of physician and patient, and does not preclude a physician from testifying as to information respecting a patient which he acquired either before the relation began or after its termination. . . . If the physician does not act in a professional capacity to treat but for some independent purpose known to the person examined, no privilege ordinarily attaches. Thus a physician who at the direction of a prosecuting attorney or a court makes an examination of a defendant for the purpose of determining his physical condition is competent to testify regarding the information he gained if he does not assume to act as the physician for the patient or proffer to the latter his professional aid." 28 R. C. L. pp. 539, 540.

Cyc. (40 Cyc. pp. 2382, 2383) says: "In order for a physician to be incompetent, the relation of the physician and patient must have existed between him and the person as to whose statements, symptoms,

or condition he is called to testify at the time when he acquired the information which he is called on to disclose; and so a physician may testify as to what he observed or learned as to a person's condition before the relation of physician and patient was established between himself and such person, or as to matters which transpired or which he observed after the relation had ceased. No professional relation precluding a disclosure of information acquired arises where a physician employed for that purpose alone makes an examination of a person charged with crime in order to pass upon his sanity, or to search for physical symptoms bearing upon his guilt or innocence."

As I construe the evidence in this case, the trial court was entirely justified in holding that the relation of physician and patient did not exist at the time the defendant was examined, and the specimen of blood obtained for use in applying the Wasserman test; and that such relation did not arise until some time after the result of the test became known. The examination was not made in contemplation of and as a preparation for professional treatment. Neither was it made for the purpose of obtaining evidence for or against the defendant. It was made for another wholly different, but entirely lawful purpose,—namely, to enable the sheriff to properly safeguard the health of the other prisoners in his care.

NUESSLE, J., concurs in dissenting opinion.

PER CURIAM. In this case a rehearing was ordered and a re-argument had. A majority of the court adhere to the former opinion prepared by Chief Justice BRONSON, and Judges CHRISTIANSON and NUESSLE adhere to views expressed in their dissenting opinion.