STATE of North Dakota, Plaintiff and Appellee,

v.

Gordon E. VALGREN, Jr., Defendant and Appellant.

Cr. No. 1226.

Supreme Court of North Dakota.

Aug. 20, 1987.

James O. Johnson, Asst. State's Atty., Stanton, for plaintiff and appellee.

Hagen, Quast & Alexander, Beulah, for defendant and appellant; argued by Larry W. Quast.

LEVINE, Justice.

Gordon E. Valgren, Jr., appeals from a judgment of conviction entered upon a jury verdict finding him guilty of driving while under the influence of alcohol. We affirm.

On May 3, 1986, Beulah police officer Mike Lynk arrested Valgren outside the incorporated city limits of Beulah for driving while under the influence of alcohol. Valgren was taken to the Mercer County Sheriff's Office where he was recorded on

audio-visual tape while he was being booked and given two Intoxilyzer tests.

The court determined that Valgren was indigent and appointed counsel to represent him. On May 16, 1986, Valgren moved to take discovery depositions, at state expense, of officer Lynk and all other eyewitnesses to the arrest. He also moved to dismiss the complaint on the ground that, at the time of the arrest, officer Lynk did not have probable cause to believe Valgren was driving while under the influence of intoxicating liquor. The State resisted the motion to take depositions at its expense, contending that less formal means of discovery were available and that the motion should be denied for reasons of "economics and practicality." The court denied the motion for depositions, but granted a hearing to determine probable cause:

"THE COURT: I'll grant a hearing as regards Officer Link. Anyone else you want at the hearing?

"MR. QUAST: At this point I'm not sure, Your Honor. I would prefer to make that definitive statement to this Court after all of the depositions have been completed.

"THE COURT: I'm not going to allow the depositions.

"MR. QUAST: How am I going to discover the facts and examine and cross examine?

"THE COURT: Be ingenious, get the facts from your client and make a determination as to who you need at that hearing. If you want all three of them, get all three of them.

"MR. QUAST: I would then like all three of them if I'm not going to be permitted to take discovery.

"THE COURT: All right, you may have all three of them."

However, Valgren did not avail himself of the opportunity for a probable cause hearing.

On June 4, 1986, Valgren served a demand for discovery and inspection on the State's Attorney which requested, among other things, "[a]ll books, papers, documents, photographs, sound or video recordings, tangible objects, buildings, or places which are intended for use by the State as evidence at the trial or were obtained from or belonging to Defendant." The Assistant States Attorney responded:

"In response to your Demand for Discovery and Inspection, the following documents are enclosed: (1) Intoxilyzer test record (2), (2) Request and Notice form, (3) Offense/Incident Report, and (4) Driving record.

"The witnesses that may be called are Mike Lynk, Beulah Police Department, Stan Burling, Mercer County Sheriff's Office, Kevin Boeshans, Mercer County Sheriff's Office and Florence Giles, Mercer County Sheriff's Office. To the best of my knowledge none of these witnesses have prior felony convictions.

"Any of your client's statements are either recorded on video tape or reflected in the officer's report. You may inspect the video tape at your convenience at the Mercer County Sheriff's Office.

"This is intended as a complete response to your Demand for Discovery and Inspection."

At trial, Valgren moved to prevent the State from playing the audio-visual tape to the jury. The trial court denied his motion, ruling that it was not timely. Valgren also moved to dismiss the complaint, asserting that Lynk, a Beulah police officer, lacked jurisdiction to arrest him because the arrest was more than one and one-half miles outside the Beulah city limits. The court denied his motion. Thereafter, the jury returned a guilty verdict and Valgren appealed.

Valgren initially contends that the trial court erred in denying his motion for discovery depositions at state expense. He asserts that he would have been able to take those depositions had he not been indigent. Thus, he argues that the denial of his motion violated the equal protection and due process clauses of the United States Constitution and Art. 1, § 12 of the North Dakota Constitution. He argues that his inability to take those depositions deprived him of a fair trial.

The State responds that there were adequate alternatives to discovery depositions

which Valgren failed to employ. The State asserts that the police officers were available for tape recorded interviews and would have been available for cross-examination at the probable cause hearing.

In *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the Court held that an indigent defendant, who makes a preliminary showing that his sanity at the time of the alleged offense is likely to be a significant factor at trial, must be provided, at State expense, access to psychiatric assistance on that issue. The rationale for providing an indigent defendant the basic tools of an effective defense, or an adequate alternative, is instructive:

"This Court has long recognized that when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. This elementary principle, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake....

"Meaningful access to justice has been the consistent theme of these cases. We recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense. Thus, while the Court has not held that a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy, see *Ross v. Moffitt*, 417 U.S. 600 [94 S.Ct. 2437, 41 L.Ed.2d 341] (1974), it has often reaffirmed that fundamental fairness entitled indigent defendants to 'an adequate opportunity to present their claims fairly within the adversary system,' *id.*, at 612

[, 94 S.Ct. at 2445.] To implement this principle, we have focused on identifying the 'basic tools of an adequate defense or appeal,' *Britt v. North Carolina*, 404 U.S. 226, 227 [, 92 S.Ct. 431, 433, 30 L.Ed.2d 400] (1971), and we have required that such tools be provided to those defendants who cannot afford to pay for them." *Ake v. Oklahoma*, 470 U.S. at 76–77, 105 S.Ct. at 1093–1094, 84 L.Ed.2d at 61–62.

*See Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971) [indigent defendant was not denied due process or equal protection where he had access to adequate alternative for requested materials].

■ In this case, Valgren was not denied access to the "raw materials integral to ... an effective defense." He had the opportunity to take statements from each of the officers involved. The court also authorized Valgren to examine the arresting officer or any other officers at the probable cause hearing. However, Valgren did not exercise that authority. The trial court's denial of Valgren's motion for discovery depositions at state expense is no indication that Valgren would have been limited in any manner in examining any officers at the probable cause hearing. Under these circumstances, we conclude that Valgren had an adequate alternative to taking discovery depositions at state expense, and the trial court did not err in refusing to allow him to take those depositions.

Valgren next contends that the trial court erred in permitting the jury to view the audio-visual tape because the tape compelled him to be a witness against himself.

Valgren did not make a pre-trial motion to suppress the audio-visual tape. His objections to the audio-visual tape were made at trial. The trial court denied Valgren's motion to suppress, determining that it was not timely. Thereafter, Valgren moved for a continuance or, alternatively, that the audio portion of the tape not be played to the jury. The trial court also denied that motion.

N.D.R.Crim.P. 12 provides:

*"(b) Pretrial Motions.* Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. *The following must be raised prior to trial:*

\* \* \* \* \* \*

"(3) *Motions to suppress evidence on the ground that it was illegally obtained;*

\* \* \* \* \* \*

*"(c) Motion Date.* At the time of the arraignment or as soon thereafter as practicable, the court may set a time for making pretrial motions and, if required, a later date for hearing.

\* \* \* \* \* \*

*"(f) Effect of Failure to Raise Defenses or Objections.* Failure by the defendant to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to Subdivision (c), or prior to any extension thereof made by the court, shall constitute a waiver thereof, but the court for cause shown may grant relief from the waiver." [Emphasis added].

In *State v. Demery,* 331 N.W.2d 7 (N.D. 1983), we said that the failure to make a motion required to be made prior to trial pursuant to N.D.R.Crim.P. 12(b), operates as a waiver of that motion under N.D.R. Crim.P. 12(f). In that case we declined to consider the defendant's argument on appeal, noting that she had not attempted to establish just cause for her failure to raise the claim before trial or that actual prejudice resulted from the claim. However, we have not otherwise had occasion to analyze the waiver provisions of N.D.R.Crim.P. 12.

■ The relevant portion of our rule is patterned after the corresponding federal rule. While we are not compelled to interpret our state procedural rules in the same manner as the federal courts interpret their corresponding rules, the federal courts' interpretations are highly persuasive. *E.g., State v. Morris,* 316 N.W.2d 80 (N.D.1982); *State v. Hamann,* 262 N.W.2d 495 (N.D. 1978).

The Notes of Advisory Committee on Rules to Fed.R.Crim.P. 12 state the purpose for requiring suppression motions to be heard before trial:

"Subdivision (b)(3) makes clear that objections to evidence on the ground that it was illegally obtained must be raised prior to trial. This is the current rule with regard to evidence obtained as a result of an illegal search. See rule 41(e); C. Wright, Federal Practice and Procedure: Criminal § 673 (1969, Supp.1971). It is also the practice with regard to other forms of illegality such as the use of unconstitutional means to obtain a confession. See C. Wright, Federal Practice and Procedure: Criminal § 673 at p. 108 (1969). It seems apparent that the same principle should apply whatever the claimed basis for the application of the exclusionary rule of evidence may be. This is consistent with the court's statement in *Jones v. United States,* 362 U.S. 257, 264, 80 S.Ct. 725 [, 732,] 4 L.Ed.2d 697 (1960):

"This provision of Rule 41(e), requiring the motion to suppress to be made before trial, is a crystallization of decisions of this Court requiring that procedure, and is designed *to eliminate from the trial disputes over police conduct not immediately relevant to the question of guilt."* [Emphasis in original].

■ Pursuant to F.R.Crim.P. 12(b)(3) and (f), motions to suppress evidence must be made before trial or they are waived. *United States v. Johnson,* 614 F.2d 622 (8th Cir.1980); *United States v. Tisdale,* 647 F.2d 91 (10th Cir.), *cert. denied,* 454 U.S. 817, 102 S.Ct. 95, 70 L.Ed.2d 86 (1981); *see* 8 Moore's Federal Practice ¶ 12.03[2]; 1 Wright Federal Practice and Procedure § 193. If the movant establishes "just cause" the court may, in its discretion, hear the motion to suppress during trial. *United States v. Slocum,* 708 F.2d 587 (11th Cir.1983); *United States v. Mangieri,* 694 F.2d 1270 (D.C.Col.1982); *United States v. Echols,* 577 F.2d 308 (5th Cir.), *cert. denied,* 440 U.S. 939, 99 S.Ct. 1288, 59 L.Ed.2d 499 (1978).

In this case, pursuant to N.D.R.Crim.P. 12(c), the trial court set May 19, 1986, as the final day for making pre-trial motions. On May 16, 1986, Valgren made a motion to dismiss, a motion for discovery depositions and a motion for additional expenses. Those motions were resolved by the trial court on June 6, 1986. After the May 19, 1986 deadline set by the court for making pre-trial motions, Valgren requested a list of the evidence that the State intended to use at trial. The State responded by letter which indicated that the audio-visual tape was available for inspection at the Sheriff's office. That letter also indicated that it was intended as a complete response to Valgren's demand for discovery. At no time thereafter did Valgren make a pre-trial motion to suppress the audio-visual tape. During the trial on October 28, 1986, Valgren moved to suppress the audio-visual tape. The trial court determined the motion was untimely and denied it without reaching the merits. The resolution of that motion on the merits would have created substantial delay in the jury trial which is precisely the reason for requiring such motions to be made before trial.

In the trial court Valgren argued that because the State had not specifically responded that it would offer the audio-visual tape at trial, he was entitled to make his motion at trial. While the State did not respond separately to each of the eighteen questions in Valgren's request for discovery, the State's response sufficiently established that it would offer the audio-visual tape into evidence at trial. The trial court was informed of the State's response to Valgren's requests for discovery and determined that his motion was not timely, in effect, deciding that Valgren had not demonstrated "just cause" for relief from the waiver.[1]

■ Under these circumstances, we conclude that the trial court did not err in determining that Valgren's motion to suppress was untimely and did not abuse its discretion in denying him relief from the waiver. Because of our resolution of this issue we need not address the merits of Valgren's constitutional arguments concerning the audio-visual tape.

■ In his argument on the motion to suppress the audio-visual tape, Valgren also contended that the tape was not relevant to whether he was driving under the influence of intoxicating liquor when he was arrested because it was made some time thereafter. The record does not disclose whether or not the trial court had an opportunity to view the audio-visual tape before it was played at trial. We assume it did not. While objections to the relevancy of evidence may ordinarily be made during trial, the better practice here, in view of the nature of the evidence, would have been a motion in limine. However, the trial court was apprised that the audio-visual tape showed the events of Valgren's booking during the time shortly after he was arrested. Implicit in the trial court's decision is a determination that the audio-visual tape was relevant. In ruling on the relevancy of evidence, a trial court has broad discretion to balance the probative value of the evidence against the risk of unfair prejudice, and its decision will not be overturned on appeal absent an abuse of discretion. *State v. Newnam,* 409 N.W.2d 79 (N.D. 1987). The audio-visual tape was made within an hour of Valgren's arrest and his condition as exhibited on the tape was highly probative of his condition when he was driving. Under these circumstances, we conclude that the trial court did not abuse

---

1. We note that several federal courts of appeal have considered the merits of an untimely suppression motion if the district court had done so, holding that the district court, in essence, had determined that just cause had been shown. *United States v. Soto,* 591 F.2d 1091 (5th Cir.), *cert. denied,* 442 U.S. 930, 99 S.Ct. 2862, 61 L.Ed.2d 298 (1979); *United States v. Banks,* 687 F.2d 967 (7th Cir.1982); *United States v. Contreras,* 667 F.2d 976 (11th Cir.), *cert. denied,* 459 U.S. 849, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982). However, other courts of appeal have refused to consider the merits of a suppression issue even though the district court considered the issue. *United States v. Worthington,* 698 F.2d 820 (6th Cir.1983); *United States v. Baker,* 638 F.2d 198 (10th Cir.1980). None of these cases is apposite because the trial court did not address the merits of Valgren's motion.

its discretion in permitting the jury to view the audio-visual tape.

Valgren next contends that N.D.C.C. § 40–20–05,[2] deprived Beulah police officer Lynk of jurisdiction to arrest him because the arrest took place more than one and one-half miles outside the Beulah city limits. However, the State offered evidence that the arrest occurred within the prescribed distance and we are not persuaded by Valgren's argument to the contrary.

The judgment of conviction is affirmed.

ERICKSTAD, C.J., and GIERKE, MESCHKE, JJ., concur.

VANDE WALLE, J., concurs in the result.

**2.** N.D.C.C. § 40–20–05, provides:

"*Chief of police and police officers—Powers and duties—Hot pursuit.*

"1. The chief of police shall perform such duties as shall be prescribed by the governing body for the preservation of the peace. The chief of police shall have the authority to administer oaths to police officers under his supervision. Within the city limits, and for a distance of one and one-half miles [2.41 kilometers] in all directions outside the city limits, the police officers and watchmen of the city shall perform the duties and exercise the powers of peace officers as defined and prescribed by the laws of this state.

"2. A police officer in 'hot pursuit' may continue beyond the one and one-half mile [2.41 kilometers] limit to make an arrest, in obedience to a warrant or without a warrant under the conditions of section 29–06–15, whenever obtaining the aid of peace officers having jurisdiction beyond that limit would cause a delay permitting escape. As used in this subsection, 'hot pursuit' means the immediate pursuit of a person who is endeavoring to avoid arrest.

"3. Police officers shall serve and execute any warrant, writ, process, order, or notice issued to them by a municipal judge within the city in any civil or criminal action or proceeding for or on account of a violation of any city ordinance or in any action or proceeding in which the city is a party or is interested beneficially. The police, within the limits prescribed in this section, may serve and execute all writs and process issued by justices in civil actions. In addition to the duties set out in this section, the police shall perform such other duties as may be prescribed by ordinance or statute."