STATE of North Dakota, Plaintiff and Appellee,

v.

Dallas SCHROEDER, Defendant and Appellant.

Crim. No. 940088.

Supreme Court of North Dakota.

Dec. 2, 1994.

Mark R. Boening, Asst. State's Atty., Fargo, for plaintiff and appellee.

Robin L. Olson, Evans & Olson, argued for Nelson Law Office, Fargo, for defendant and appellant.

VANDE WALLE, Chief Justice.

Dallas Schroeder appealed from a judgment of conviction for driving while under the influence of alcohol. We reverse and remand for further proceedings.

At about 10:30 p.m. on May 12, 1993, Schroeder was involved in a single-vehicle, motorcycle accident on an exit from Interstate 29 in Fargo. Schroeder suffered a head injury and was taken to the emergency room at Dakota Hospital, where he was treated by Dr. Robert Lane Tassin. Deputy DuWayne Nitschke of the Cass County Sheriff's Department was dispatched to the emergency room to see Schroeder. At the emergency room, Nitschke detected the odor of alcoholic beverages on Schroeder, and Schroeder told Nitschke that he had been drinking earlier. Nitschke read Schroeder the implied consent advisory, arrested him for driving under the influence of alcohol, and directed a nurse to draw a blood sample from Schroeder. The result of that test indicated Schroeder's blood-alcohol concentration was .11 percent.

Over Schroeder's objection, the trial court admitted into evidence the result of the blood test requested by Deputy Nitschke. Nitschke also testified about his observations of Schroeder and Schroeder's statements to him at the emergency room. The State also introduced testimony of Brad Espe, a witness to the accident. Espe testified that, immediately before the accident, he was traveling south on Interstate 29 when Schroeder's motorcycle "came flying by" Espe's vehicle "like it wasn't even there," and when Schroeder entered the exit, he hit a pole. Espe testified that he found Schroeder unconscious at the accident scene and detected the odor of alcoholic beverages on his breath. Espe testified that the road conditions were good and that he believed Schroeder was under the influence of alcohol.

In its case-in-chief, the State also called Dr. Tassin to testify. The trial court refused to allow Dr. Tassin to testify about any statements Schroeder made to him and refused to consider the results of a blood-alcohol test ordered by him for diagnostic purposes. Over Schroeder's objection, the court allowed Dr. Tassin to testify about his observations and examination, including that Schroeder "had numerous scrapes and bruises, a bruised kidney, a closed head injury," and that he was "[b]elligerent, [had an] obnoxious behavior, an odor of alcoholic beverages and ataxia." Dr. Tassin further testified that

although those symptoms were consistent with a closed head injury, he nevertheless believed Schroeder was under the influence of alcohol.

The trial court found Schroeder guilty of driving while under the influence, and he appealed.

## I

■ Schroeder argues that NDCC § 39-20-01, which establishes procedures under North Dakota's implied consent law, requires law enforcement officials to give DUI arrestees an implied consent advisory *after* an arrest. Schroeder concedes that Deputy Nitschke gave him the implied consent advisory *before* the arrest, but argues that the results of the blood test must be suppressed because Nitschke failed to give him the advisory *after* the arrest.

The State responds that Schroeder waived his right to raise this issue, because he did not raise it in a pretrial motion under N.D.R.Crim.P. 12 to suppress the results of the blood test. Alternatively, the State argues that N.D.C.C. § 39-20-01 does not impose a specific sequence for the implied consent advisory and arrest, but only requires that both occur before a blood sample is taken. Relying on *State v. Abrahamson*, 328 N.W.2d 213 (N.D.1982), the State also asserts that N.D.C.C. § 39-20-01 applies only to license revocation proceedings and does not affect the admissibility of evidence in a criminal proceeding.

■ Under N.D.R.Crim.P. 12(b)(3), a motion to suppress evidence on the ground that it was illegally obtained must be raised prior to trial and the failure to do so generally constitutes a waiver. *City of Fargo v. Cos-*

sette, 512 N.W.2d 459 (N.D.1994); *State v. Raywalt*, 436 N.W.2d 234 (N.D.1989); *State v. Valgren*, 411 N.W.2d 390 (N.D.1987). However, if the movant establishes "just cause," the court may, in its discretion, grant relief from the waiver. *State v. Neset*, 462 N.W.2d 175 (N.D.1990); *State v. Raywalt, supra; State v. Valgren, supra.*

In this case Schroeder filed three pretrial motions.[1] None of those motions raised an issue about the sequence of the implied consent advisory and an arrest. Schroeder's argument, raised for the first time during trial, is essentially that the result of that blood test was illegally obtained because of an improper law enforcement practice. Motions to exclude evidence on that ground must be made prior to trial. *City of Fargo v. Cossette, supra.* Schroeder has not established "just cause" for his failure to raise this issue prior to trial, and his failure to do so constitutes a waiver under N.D.R.Crim.P. 12. We will not further consider that issue.

## II

■ Schroeder argues that Dr. Tassin's testimony about his observations and treatment violated the physician-patient privilege under N.D.R.Evid. 503. The State responds that Dr. Tassin's testimony did not violate the physician-patient privilege, because it did not consist of any "communications" by Schroeder within the meaning of N.D.R.Evid. 503. The State argues that communications mean "verbal statements" between the patient and physician. For purposes of the physician-patient privilege, we refuse to construe "communications" that narrowly.

At common law there was no physician-patient privilege. *Booren v. McWilliams*, 26

1. Schroeder filed a pretrial motion to dismiss, alleging Deputy Nitschke lacked probable cause to arrest. Schroeder also filed a pretrial motion to suppress his statements and the result of the blood test ordered by Nitschke, alleging: (1) the statements were made without the benefit of a *Miranda* warning, (2) Nitschke lacked probable cause to arrest him, and (3) the blood test was not taken within two hours of driving. The trial

court denied those motions. Schroeder then moved to suppress the result of the blood test on the ground that a "vacutainer" tube is a "device" used to withdraw and test blood and is not certified by the State Toxicologist under N.D.C.C. § 39-20-07(6). After this court's decision in *Bieber v. North Dakota Dept. of Transportation*, 509 N.W.2d 64 (N.D.1993), the trial court denied that motion.

N.D. 558, 145 N.W. 410 (1914). See 81 Am. Jur.2d, *Witnesses* § 436 (1992); 1 McCormick on Evidence § 98 (4th ed. 1992); 8 Wigmore on Evidence § 2380 (McNaughton Rev.1961). Because the physician-patient privilege did not exist at common law and is a creature of statute or rule, its existence and scope depends upon the specific language of the statute or rule authorizing it. The language of those statutes and rules varies extensively. Some rules preclude the admission into evidence of a patient's "confidential communications" to a physician, while others preclude the admission of confidential "information acquired [by the physician] in attending the patient which was necessary to enable him to prescribe or act for the patient." 1 McCormick, *supra*, at § 100; 3 Erwin, Defense of Drunk Driving Cases, § 30.03 (3rd Ed.1994).

According to one commentator, the protective scope of a rule precluding the admission of "information acquired in attending the patient" is significantly greater than a rule precluding the admission of a patient's "confidential communications." 3 Erwin, *supra*, § 30.03[1]. See also *Oxford v. Hamilton*, 297 Ark. 512, 763 S.W.2d 83 (1989); *Baker v. State*, 276 Ark. 193, 637 S.W.2d 522 (1982). However, McCormick suggests that, although a "confidential communications" rule facially appears to be more restrictive than a "any information" rule, the former generally has been construed to confer as broad a privilege as the latter. 1 McCormick, *supra* at § 100. See *Branch v. Wilkinson*, 198 Neb. 649, 256 N.W.2d 307 (1977). Without noting the different language, other authorities generally recognize that communications may include a physician's observations as well as a patient's oral or written statements. 8 Wigmore, *supra* at § 2384. See 81 Am. Jur.2d, *Witnesses, supra* at § 472.

N.D.R.Evid. 503 authorizes a physician-patient privilege for "confidential communications":

"(b) *General Rule of Privilege.* A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental, or emotional condition, including alcohol or drug addiction, among himself, his physician or psychotherapist, and persons who are participating in the diagnosis or treatment under the direction of the physician or psychotherapist, including members of the patient's family."

In interpreting our rules of court, we apply principles of statutory construction to ascertain intent. *Walker v. Schneider*, 477 N.W.2d 167 (N.D.1991); *State v. Manke*, 328 N.W.2d 799 (N.D.1982). In determining intent, we first look to the language of the rule. *Walker v. Schneider, supra.* Unless words in a statute are defined in the code, they are given their plain, ordinary, and commonly understood meaning. N.D.C.C. § 1–02–02; *Kim–Go v. J.P. Furlong Enterprises, Inc.*, 460 N.W.2d 694 (N.D.1990). We construe statutes as a whole to give meaning to each word and phrase, if possible. *Stewart v. Ryan*, 520 N.W.2d 39 (N.D.1994). We have also said that evidentiary privileges should be narrowly construed because they are in derogation of the search for the truth. *Knoff v. American Crystal Sugar Co.*, 380 N.W.2d 313 (N.D.1986) [attorney-client privilege].

The privilege authorized by N.D.R.Evid. 503 is not limited to verbal statements, but applies to communications. Although N.D.R.Evid. 503 does not define communications, it defines when a "communication is 'confidential'"[2] to include "the consultation, examination, or interview," and "the diagnosis and treatment." That definition suggests that the term has a broader meaning than verbal statements. Additionally, Webster's

**2.** N.D.R.Evid. 503(a)(4) provides:
"(a) *Definitions.* As used in this rule:
\* \* \* \* \* \*
"(4) A communication is 'confidential' if not intended to be disclosed to third persons, except persons present to further the interest of the patient in the consultation, examination, or interview, persons reasonably necessary for the transmission of the communication, or persons who are participating in the diagnosis and treatment under the direction of the physician or psychotherapist, including members of the patient's family."

New World Dictionary, Second College Edition (1980) at p. 287, defines "communication" as "the act of transmitting" and "a giving or exchanging of information, signals, or messages by talk, gestures, writing, etc." That plain, ordinary, and commonly understood meaning of communications is not restricted to verbal statements and also supports a broader meaning for the term.

The explanatory note to N.D.R.Evid. 503, indicates that it is modeled after Rule 503 of the Uniform Rules of Evidence (1974). The explanatory note recognizes that the privilege applies only to those communications made for the purpose of diagnosis or treatment and is "a narrower privilege than under prior law, § 31–01–06, NDCC, which covered 'any communication made by the patient in the course of professional employment.'"

However, N.D.C.C. § 31–01–06(3), arguably was broader in one other respect, because it also applied to "any information acquired in attending the patient."[3] The source note for N.D.C.C. § 31–01–06 traces its origins to 1877 Revised Codes Territory of Dakota, C.Civ.P. § 499, which made privileged "any information acquired in attending the patient which was necessary to enable [the physician] to prescribe or act for the patient."[4] Under that version of the physician-patient privilege, this court held that for the privilege to apply, information or statements from the patient must have been necessary to enable the physician to prescribe or act for the patient. Compare *State v. Moore,* 52 N.D. 633, 204 N.W. 341 (1925) with *Booren v. McWilliams,* 26 N.D. 558, 145 N.W. 410 (1914).

In 1965, the Legislature changed the scope of the former physician-patient privilege to preclude the admission into evidence of "any information acquired in attending the patient or as to any communication made by the patient to him in the course of professional employment." 1965 N.D.Sess.Laws, ch. 230, § 1. The available legislative history for that amendment indicates an intent to broaden the physician-patient privilege. January 27, 1965 Minutes of Senate Judiciary Committee regarding Senate Bill 131.

Although N.D.C.C. § 31–01–06(3) broadly referred to "any information," there is no indication that, when this court adopted the "communications" language of N.D.R.Evid. 503 in 1977, we intended to otherwise narrow the scope of the privilege except, as noted in the explanatory note, that the communications must be for the purpose of diagnosis or treatment instead of in the course of professional employment. In the absence of any indication of an intent to restrict the privilege to verbal statements, and in view of the ordinary meaning of communication and the definition of when a communication is confidential, we will not narrowly construe "communications" to mean only verbal statements made for the purpose of diagnosis or treatment. Compare *Baker v. State,* 276 Ark.

---

**3.** N.D.C.C. § 31–01–06(3) provided:

"A person cannot be examined as a witness in the following cases:

* * * * * *

"A physician or surgeon, without the consent of his patient, cannot be examined as to any information acquired in attending the patient or as to any communication made by the patient to him in the course of professional employment."

**4.** 1877 C.Civ.P. § 499, provided:

"There are particular relations in which it is the policy of the law to encourage confidence and to preserve it inviolate; therefore, a per-

son cannot be examined as a witness in the following cases:

* * * * * *

"3. A physician or surgeon cannot, without the consent of his patient, be examined in a civil action as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient." Section 5703, R.C. 1895, removed the limitation of "a civil action." The physician-patient privilege in N.D.R.Evid. 503 applies to criminal actions. N.D.R.Evid. 101, 1101. See generally Annot., *Applicability in Criminal Proceedings of Privilege as to Communications between Physician and Patient,* 7 A.L.R.3d 1458 (1966).

193, 637 S.W.2d 522 (1982) [adoption of "communication" rule to replace "any information" statute required narrower interpretation of privilege].

We note that, in the context of evidentiary privileges, other courts have not limited communications to written or verbal statements. *Hazelwood v. State*, 609 N.E.2d 10 (Ind.Ct. App.1993) [communication protected by marital privilege not limited to written or spoken words]; *State v. Dist. Court of Iowa*, 218 N.W.2d 641 (Iowa 1974) [communication protected by physician-patient privilege means all knowledge and information gained by physician in observation and personal examination of patient in discharge of physician's duties]; *State v. Smith*, 384 A.2d 687 (Me. 1978) [communication for purpose of marital privilege can be nonverbal act]; *Commonwealth v. Clancy*, 402 Mass. 664, 524 N.E.2d 395 (1988) [communication protected by patient-psychotherapist privilege includes conversations, correspondence, actions, occurrences, memoranda, or notes relating to diagnosis or treatment]; *Matter of Doe*, 98 N.M. 442, 649 P.2d 510 (1982) [communication protected by psychotherapist privilege includes verbal communication, information or knowledge gained by observation and personal examination of patient, inference and conclusions drawn therefrom, and exhibiting the body or a part thereof for an opinion, examination, or diagnosis]; *State v. Dress*, 10 Ohio App.3d 258, 461 N.E.2d 1312 (1982) [physician ordered blood-alcohol test administered for purposes of diagnosis in connection with emergency room examination constituted a communication for purposes of physician-patient privilege]. Compare *Oxford v. Hamil-*

*ton*, 297 Ark. 512, 763 S.W.2d 83 (1989) [result of physician ordered blood test not a communication]; *Snow v. State*, 744 P.2d 980 (Okl.Crim.App.1987) [odor of alcohol on patient's breath and behavior at hospital not a "confidential" communication for purposes of physician-patient privilege].

 We follow the ordinary meaning of "communications" and hold that the physician-patient privilege authorized by N.D.R.Evid. 503 applies to information and observations made by a physician for purposes of diagnosis or treatment of the patient's medical condition.[5] Compare *State v. Irish*, 223 Neb. 578, 391 N.W.2d 137 (1986) [information that is not obtained for purposes of diagnosis or treatment of medical condition is not confidential communication]. In this case, Dr. Tassin testified that his observations and examination of Schroeder were for the purpose of diagnosis and treatment of a possible closed head injury. We therefore conclude that the trial court erred in allowing Dr. Tassin to testify about those observations and his opinion that Schroeder was under the influence of alcohol.[6]

We reverse the conviction and remand for further proceedings consistent with this opinion.

MESCHKE, LEVINE, NEUMANN and SANDSTROM, JJ., concur.

---

**5.** Our interpretation does not change our decision in *State v. Erickson*, 241 N.W.2d 854 (N.D. 1976), that a blood-alcohol test ordered by law enforcement officials pursuant to the implied consent law is not taken for purposes of diagnosis or treatment. We adhere to our decision in *Erickson* that the physician-patient privilege does not apply to the results of a blood sample ordered for purposes of the implied consent law.

**6.** The State has not argued that Dr. Tassin's observations and examination were in the presence of third parties so that the communications were not confidential. See *State v. Kunz*, 457

N.W.2d 265 (Minn.Ct.App.1990) [physician-patient privilege does not apply to observations and examination by physician while a stranger to the physician-patient relationship was present in examination room with patient's acquiescence].

In this case, Dr. Tassin testified about his observations on direct examination in the State's case-in-chief. The State has not argued that the privilege is not applicable because Dr. Tassin's observations were relevant to a defense to the charge under N.D.R.Evid. 503(d)(3). We do not decide that question here.