**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Donald P. LAMB, Defendant and Appellant.**

**Cr. No. 950105.**

Supreme Court of North Dakota.

Jan. 5, 1996.

458

David T. Jones (appearance), Assistant State's Attorney, Grand Forks, for plaintiff and appellee. Argued by Faye Jasmer, third year law student.

Thomas K. Schoppert, Schoppert Law Firm, Minot, for defendant and appellant.

VANDE WALLE, Chief Justice.

Donald Lamb appealed from a judgment of conviction entered upon a jury verdict finding him guilty of driving while under the influence of intoxicating liquor. Because we find prejudicial error in the trial court's failure to read its instructions to the jury, we reverse and remand for further proceedings.

On December 10, 1994, North Dakota Highway Patrolman Craig Klosterman stopped Lamb for speeding. Klosterman observed indicia of intoxication and asked

Lamb to perform several field sobriety tests, which he failed. An Intoxilyzer test disclosed that Lamb had an alcohol concentration of .14 percent, and Lamb was charged with driving while under the influence of intoxicating liquor.

In January 1995, the North Dakota Department of Transportation suspended Lamb's drivers license.[1] Lamb thereafter moved to dismiss this criminal proceeding, contending it violated the double jeopardy provisions of the state and federal constitutions. The trial court denied Lamb's motion. During a jury trial, the State introduced the result of Lamb's Intoxilyzer test and also asked Klosterman if Lamb had requested an alternative blood-alcohol test. When the case was submitted to the jury, the trial court, over Lamb's objection, refused to read the final instructions to the jury, and, instead, directed the jury foreperson to read them "verbatim and completely" to the jury during deliberations. The jury found Lamb guilty of driving while under the influence.

Lamb contends the trial court's procedure for instructing the jury violated N.D.R.Crim.P. 30, because subsection (b) requires the court to "read" written instructions to the jury. The State asserts the trial court's procedure complied with N.D.R.Crim.P. 30, because subsection (a) only requires the court to "instruct" the jury and "instruct" is not synonymous with "read." The State argues that a trial court has discretion under N.D.R.Crim.P. 30 to either read the instructions to the jury, or to orally direct the jury to read the instructions during deliberations.

Rule 30, N.D.R.Crim.P., provides, in part:

"*(a) Instructions to Jury; Written or Oral.* The court shall instruct the jury after the arguments of counsel to the jury are concluded. The court shall instruct the jury only as to the law of the case. The instructions shall be reduced to writing unless the parties otherwise agree. If written instructions are given they shall be signed by the judge and shall be taken by the jurors in their retirement. When oral instructions are given, they must not be taken by the jurors in retirement unless, after they have been transcribed, it is so ordered by the court. All instructions taken by the jurors in retirement shall be returned into court with their verdict.

"*(b) Requested Instructions.* At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court may require that each instruction be written on a separate sheet, provided that North Dakota pattern jury instructions may be requested by reference to instruction number only. The court shall inform counsel in writing of its action upon requested instructions prior to their argument to the jury. All instructions given by the court to the jurors must be read or given to them orally by the court without disclosing whether the instructions were requested."

■■■ In interpreting our rules of court, we apply principles of statutory construction to ascertain intent.[2] *State v. Schroeder,* 524 N.W.2d 837 (N.D.1994); *Walker v. Schneider,* 477 N.W.2d 167 (N.D.1991). In ascertaining intent, we look first to the language of the rule. *Schroeder, supra.* Words in a rule are construed in accordance with their plain, ordinary, and commonly understood meaning. *Id.* We construe rules as a whole to give meaning to each word and phrase, if possible. *Id.*

■■■ When N.D.R.Crim.P. 30 is read as a whole, we believe it requires that, except when the parties agree to oral instructions by the court, final jury instructions must be in written form and must be read by the court to the jury. We decline to construe the

---

1. In *Lamb v. Moore,* 539 N.W.2d 862 (N.D.1995), we affirmed the administrative suspension of Lamb's license.

2. Rule 30, N.D.R.Crim.P., is one of the few rules not derived from the federal rules. See *infra* p. 461. However, insofar as the federal rules may be similar, we consider cases construing the federal rules for guidance in our interpretation of this rule. *Compare Severson v. Surita,* 506 N.W.2d 410 (N.D.1993) [rule adopted from federal rule; interpretations by federal courts, while not mandatory, are highly persuasive].

general term "instruct" to allow a court to submit written instructions to a jury without the court reading those instructions to the jury.

Other courts have construed "instruct" to require a trial court to orally read written instructions to the jury. *People of the Territory of Guam v. Marquez*, 963 F.2d 1311 (9th Cir.1992); *United States v. Noble*, 155 F.2d 315 (3rd Cir.1946); *State v. Iosefa*, 77 Hawai'i 177, 880 P.2d 1224 (Haw.Ct.App.1994); *Purdy v. Indiana*, 267 Ind. 282, 369 N.E.2d 633 (1977); *State v. Norris*, 10 Kan.App.2d 397, 699 P.2d 585 (1985); *State v. Lindsey*, 245 N.J.Super. 466, 586 A.2d 269 (1991); see 2 Wright, Federal Practice and Procedure: Criminal 2d § 483 (1982); 75A Am.Jur.2d, Trial § 1156 (1991).

In *Noble, supra*, the Third Circuit Court of Appeals held that a trial court committed reversible error in submitting only a criminal information to the jury without also instructing the jury about the essential elements of the alleged crime. In analyzing the trial court's failure to read any instructions to the jury, the appellate court explained:

> "[W]e think that even if the information had contained a full recital of all the applicable legal principles the trial judge would not have fulfilled his duty in this regard merely by sending the information out with the jury to read if they chose to do so, during their deliberations. For not only are counsel and the defendant entitled to hear the instructions in order that they may, if they are incorrect, object to them and secure their prompt correction by the trial judge, but it is equally important to make as certain as may be that each member of the jury has actually received the instructions. It is therefore essential that all instructions to the jury be given by the trial judge orally in the presence of counsel and the defendant."

*Noble, supra*, 155 F.2d at 318.

In *Norris, supra*, the Kansas Court of Appeals held that a trial court committed reversible error in delivering written instruc-

tions to the jury without first reading those instructions to the jury. The court of appeals explained:

> "[W]e too conclude that oral instruction is vital to the fulfillment of the court's duty to instruct the jury. Instruction of the jury is one of the most fundamental duties of the court and it is only through their oral delivery that the court can be assured that each member of the jury has actually received all of the instructions. If, for example, written copies of the instructions are given to each juror, a divergence in literacy and reading comprehension may well leave some jurors uninstructed. On the other hand, if the foreman is directed to read the instructions to the other jurors, defendant is deprived of the opportunity to witness the manner in which the foreman intones the instructions. A judge is obligated to act in an impartial and unbiased manner in delivering instructions. He may not sneeringly describe the defendant's defense or make editorial comments while reading the instructions. A jury foreman is under no such constraint once the case has been submitted."

*Norris, supra*, 699 P.2d at 588.

That rationale is consistent with the purpose of N.D.C.C. § 29–22–05, which provides that, after a case has been submitted to the jury, all communications on points of law must be given in the presence of the defendant or the defendant's counsel. See *State v. Ash*, 526 N.W.2d 473 (N.D.1995); *State v. Zimmerman*, 524 N.W.2d 111 (N.D.1994); *State v. Smuda*, 419 N.W.2d 166 (N.D.1988). See also N.D.R.Crim.P. 43(a) [requiring defendant to "be present . . . at every stage of the trial."].[3]

Our interpretation is supported by our decision in *State v. Haugen*, 384 N.W.2d 651 (N.D.1986). In *Haugen*, we disapproved a procedure in which the prosecutor, rather than a magistrate, read the defendant an explanation of rights, including the right to a jury trial. In holding that the record did not establish that the defendant's waiver of his

---

**3.** Lamb has not argued that the trial court's procedure deprived him of his constitutional right to appear and defend in person, and, although we construe rules to avoid conflict with

constitutional provisions, *Walker v. Schneider*, 477 N.W.2d 167 (N.D.1991), we do not decide this issue on that basis.

right to a jury trial was voluntary, knowing, and intelligent, we explained:

"Another troubling aspect of the procedure employed below is the advisement of rights by the prosecutor instead of the court. Rule 5 of the Rules of Criminal Procedure states that the *magistrate* shall inform the defendant of his rights. The goals of expediency and efficient administration of justice are important and properly justify streamlining court procedures. But these goals cannot displace fundamental rights which are guaranteed by our Constitution, laws, and procedural rules. Although written forms that explain an individual's rights may be used to expedite the process, Rule 5 requires that the magistrate act as the conduit to the distribution and explanation of the rights. Use of adversarial counsel for this purpose is inappropriate because our rules envision communication and explanation of these important rights by the magistrate, who functions as a neutral and detached person. The magistrate's personal attendance to this function also allows the judge to observe any signs of confusion and answer any questions posed by the defendants. The judge stands as a symbol of fairness and justice to those appearing before him; persons who are unlearned in the law may not perceive the prosecutor, even while performing a nonadversarial function, as an officer of the court obligated with the same concern for justice and enforcement of rights."

*Haugen, supra,* 384 N.W.2d at 653 (footnote omitted).

■ Our interpretation is also supported by the historical evolution of our rule. If a rule is ambiguous, we may resort to extrinsic aids, including the rule's historical development, to construe it. *Walker, supra.* See N.D.C.C. § 1–02–39. The official explanatory note for N.D.R.Crim.P. 30 says it is identical to N.D.R.Civ.P. 51. *See* Oct. 17–20, 1972 Minutes of Joint Committee of the Judicial Council and the State Bar Association for the Adoption of Rules of Criminal Procedure, pp. 38–41 [adopting N.D.R.Crim.P. 30 from N.D.R.Civ.P. 51]. Both rules are derived substantially from pre-existing parallel statutes.

Historically, our statutory provisions for jury instructions said that "no judge shall instruct the petit jury in any case, civil or criminal, unless such instructions are reduced to writing." 1877 Revised Codes of the Territory of Dakota, C.Civ.P. § 248.[4] See also 1887 Compiled Laws of the Territory of Dakota, § 5048. However, those statutory provisions also required all instructions given by the judge to be read to the jury by the judge, or by the parties' respective counsel. 1877 Revised Codes of Territory of Dakota, C.Civ.P. § 249.[5] See also 1887 Compiled Laws of the Territory of Dakota, § 5049.

In 1893, those provisions were amended and re-enacted to preclude a court from instructing a jury in any civil or criminal case, unless the instructions were first reduced to writing and to provide that "[a]ll instructions given to the jury must be read to them by the court." 1893 N.D. Sess. Laws, ch. 84, § 1.[6] The 1893 statutes thus deleted the

---

4. Section 248 provided:
   "§ 248. CHARGE WHOLLY WRITTEN–GIVING AND REFUSING.] The court, in charging the jury, shall only instruct as to the law of the case; and no judge shall instruct the petit jury in any case, civil or criminal, unless such instructions are reduced to writing; ..."
   Although C.Civ.P. § 248 specifically referred to both civil and criminal cases, C.Crim.P. § 343(6) also provided that a judge's "charge must, if so requested, be reduced to writing before it is given, unless by tacit or mutual consent, it is given orally, or unless it is fully taken down at the time it is given by a stenographic reporter, appointed by the court."

5. Section 249 provided, in part:

   "§ 249. ORDER OF READING–BY WHOM–JURY TO HAVE EXCEPTIONS BEFORE JUDGMENT.] All instructions given by the judge shall be read to the jury in the following order:
   "1. Defendant's instructions by defendant's counsel.
   "2. Plaintiff's instructions by plaintiff's counsel.
   "3. Instructions given by the judge, of his own motion, if any, by the judge giving the same; and all instructions so given and read shall be taken by the jury in their retirement, and returned into court with their verdict...."

6. Chapter 84, § 1, provided, in part:

language allowing counsel for the respective parties to read certain instructions to the jury and also added language that "with the consent of both parties entered in the minutes, the court may instruct the jury orally, in which case such oral instructions shall be taken down by the official stenographer." *Id.* See fn. 6. The exception for oral instructions was intended for unusual cases in which both parties consented. *Forszen v. Hurd,* 20 N.D. 42, 126 N.W. 224 (1910). See also *State v. Mitchell,* 49 N.D. 726, 193 N.W. 310 (1923); *State v. Murphy,* 17 N.D. 48, 115 N.W. 84 (1908).

In subsequent code revisions, separate sections for civil and criminal actions were enacted; however, subject to the "exceptional" case for oral instructions, those provisions retained the general requirement that instructions must be reduced to writing and read to the jury by the court. See R.C. 1895 §§ 5432, 5433, 8176, 8177; R.C.1905 §§ 7021, 7022, 9985, 9986; C.L.1913 §§ 7620, 7621, 10822, 10823; R.C.1943 §§ 28–1411, 28–1412, 29–2130, 29–2131; N.D.R.Civ.P. 51; N.D.C.C. §§ 29–21–30, 29–21–31. N.D.R.Crim.P. 30 continues that requirement.

█ We hold that when N.D.R.Crim.P. 30 is read as a whole and in its historical context, it requires the trial court to read written jury instructions to the jury. We conclude the trial court committed prejudicial error requiring reversal in not reading the final instructions to the jury, and, instead, directing the jury foreperson to read them to the jury during deliberations. We therefore reverse Lamb's conviction, and we remand for further proceedings.

Because we remand for further proceedings, we also consider issues that are likely to arise on remand. *State v. McIntyre,* 488 N.W.2d 612 (N.D.1992); *State v. Saul,* 434 N.W.2d 572 (N.D.1989).

Lamb asserts that this criminal prosecution after the civil license suspension proceeding violated the double jeopardy clauses of the state and federal constitutions. Lamb's argument fails. This issue is controlled by our recent decision in *State v. Zimmerman,* 539 N.W.2d 49 (N.D.1995). See also *City of Dickinson v. Powell, et al.,* 539 N.W.2d 869 (N.D.1995).

█ Lamb asserts that the trial court erred in allowing the admission into evidence of the result of his Intoxilyzer test, arguing that Klosterman did not follow the State Toxicologist's Approved Method for conducting the test.

Klosterman, a certified chemical test operator, testified that after he had completed Lamb's test, he attempted to place a second test record card, which was blank, into the machine to prepare it for other officers to conduct Intoxilyzer tests on other subjects. Klosterman testified that "by inserting this record and having it reprint everything it printed on the first card, it allows the machine to be used much quicker. It effectively ends the test without having to shut it off and turn it on again and rewarm it up." Because of a defect in the second card, the Intoxilyzer would not accept the card. Nothing was printed on the second card by the machine, and Klosterman discarded it.

Lamb asserts that the State Toxicologist's Approved Method for conducting an Intoxilyzer test was not followed because the second test card was not preserved. The State responds that the approved method was followed, because the testing sequence for Lamb was properly completed when Klosterman attempted to insert the second card into the Intoxilyzer.

█ The results of a blood-alcohol test must be received into evidence if the test was fairly administered, and the fair administration of an Intoxilyzer test may be established by showing it was performed accord-

---

"WRITTEN CHARGE.] The court in charging a jury, shall only instruct as to the law of the case; and no court shall instruct the jury in any case, civil or criminal, unless such instructions are first reduced to writing....
"INSTRUCTIONS–EXCEPTIONS.] All instructions given to the jury must be read to

them by the court without disclosing to them whether such instructions were requested or not, ... *Provided,* That with the consent of both parties entered in the minutes, the court may instruct the jury orally, in which case such oral instructions shall be taken down by the official stenographer, ..."

ing to the State Toxicologist's Approved Method. N.D.C.C. § 39–20–07(5). The admissibility of a test result for alcohol concentration is a preliminary question left to the discretion of the trial court. *State v. Erickson*, 517 N.W.2d 646 (N.D.1994).

In *Lamb v. Moore*, 539 N.W.2d 862 (N.D. 1995), we rejected Lamb's argument, in the administrative context, that the blank test card was a "test record" which was required to be forwarded to the Director under N.D.C.C. § 39–20–03.1(3). We observed that Klosterman "did not conduct two separate tests.... Nor were the results of the same test printed twice. [Klosterman] merely tried to insert a second card, and because of a defect, the card was rejected by the machine. No data was printed on the card by the machine." *Lamb*, 539 N.W.2d at 864.

Here, Klosterman testified that he had completed Lamb's breath test using the Approved Method when he inserted a second blank card into the Intoxilyzer to clear the machine. Lamb's test was completed, and he is not in a position to argue that his test results were not taken under the State Toxicologist's Approved Method. We conclude that the trial court did not abuse its discretion in admitting into evidence the result of Lamb's Intoxilyzer test.

Other issues raised by Lamb are not likely to arise on remand. For reasons stated in this opinion, we reverse Lamb's conviction, and we remand for further proceedings consistent with this opinion.

SANDSTROM, MESCHKE, LEVINE and NEUMANN, JJ., concur.